UNITED STATES

v.

**Senior Airman Paul A. THOMPSON, FR 427–31–6836, United States Air Force.**

**ACM 27675.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 3 Feb. 1989.

Decided 16 Feb. 1990.

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair and Captain Mark R. Land.

Appellate Counsel for the United States: Colonel Joe R. Lamport and Captain Morris D. Davis.

Before HODGSON, SPILLMAN and PRATT, Appellate Military Judges.

## DECISION

PRATT, Judge:

Arising out of a joint military/civilian investigation and ensuing search, this case presents issues concerning the application of the Posse Comitatus Act and related statutory restrictions, as well as "plain view" issues and their preservation for appeal. As discussed hereinafter, we find no error and affirm.

Contrary to his pleas, appellant was found guilty by a general court-martial composed of members of two specifications of larceny, wrongful sale of military property, arson, and house-breaking.[1] He was sentenced to a dishonorable discharge, confinement for 10 years, total forfeitures,

and reduction to airman basic. The convening authority approved the sentence as adjudged.

On appeal, the following issue has been raised:

WHETHER THE SEARCH OF APPELLANT'S APARTMENT BY AFOSI AGENTS AND THE SUBSEQUENT SEIZURE OF MILITARY PROPERTY BY THOSE AGENTS WAS ILLEGAL UNDER 10 U.S.C. 375 AND THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION.

Appellant was a suspect in the theft of computer equipment from Wilford Hall Medical Center and the burglary/arson of an Atari computer store in the civilian community. As a result, agents of the Air Force Office of Special Investigations (AFOSI) and local arson detectives embarked on a cooperative effort to investigate appellant for these offenses. On 20 October 1988, Agent Adams, an AFOSI agent acting in an undercover role, went to an informant's residence where appellant sold him several pieces of computer equipment suspected to be items missing from Wilford Hall.

On 26 October, Agent Adams and an AFOSI computer specialist, Agent Forche, again acting in an undercover capacity, arranged to meet appellant at his residence for the purpose of possibly buying additional equipment. Their plan was to observe any other stolen computer equipment in appellant's residence, to possibly make another "buy" of such equipment, and to signal other agents at the appropriate time to apprehend appellant. Although no purchase took place on that occasion, Agent Adams did activate an electronic device which signalled a third AFOSI agent to come to the door and apprehend appellant,

---

[1]. Specification 1 of Charge I alleged a larceny of military property, the same military property which is the subject of Charge II alleging wrongful sale of military property. However, when instructing the members as to the elements of the offense of that larceny, the trial judge neglected to include the element relating to the nature of the property as "military property."

Fortunately, in determining the maximum punishment for the offenses of which the appellant was convicted, the judge used the lesser confinement period applicable to larceny of non-military property. Upon the proper advice of his staff judge advocate, the convening authority corrected the error by approving a finding of guilty of larceny, excepting the word "military".

which he did.[2] At that time, appellant requested counsel and declined to grant consent for a search of his residence.

Immediately after appellant's apprehension, Agents Adams and Forche briefed a local arson detective on the various items of computer equipment which they had observed in appellant's residence and which matched the description of equipment missing from the Atari computer store. Based on this information, the arson detective secured a search warrant from a municipal court magistrate. The warrant was executed that same evening by three members of the local police department and four AFOSI agents.[3] The local police seized various items of computer equipment associated with the Atari store as well as several "tools" believed to have been used to effect the burglary. The AFOSI agents, in the course of their participation in the search, came across and seized some computer equipment and various other items believed to be government property.

### Violation of 10 U.S.C. § 375

At trial, through four separate motions to suppress, defense counsel waged a multifaceted attack on the admissibility of the evidence seized both by the civilian detectives and by the AFOSI agents. One such motion, renewed now on appeal, charged that participation by the AFOSI agents in the execution of the civilian search warrant constituted a violation of 18 U.S.C. § 1385 (commonly known as the Posse Comitatus Act) and of 10 U.S.C. § 375.

The Posse Comitatus Act, first enacted in 1878 as a result of Reconstruction politics, was intended to halt the use of military forces in aid of civil law enforcement officials. Prior to its enactment, the use of military troops had become a common method of assisting civilian officials in suppressing illegal whiskey production, quelling labor disturbances, and insuring the sanctity of the electoral process in the South by posting guards at polling places.[4] In its present day form, as 18 U.S.C. § 1385, the Act reads:

> Whoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army or the Air Force as a posse comitatus or otherwise to execute the laws shall be fined not more than $10,000.00 or imprisoned not more than two years, or both.

For years truly an "obscure and all-but-forgotten statute,"[5] the Posse Comitatus Act has occasioned renewed, if sporadic, interest in the both federal and state courts in the past 20 years. *See United States v. Bacon*, 851 F.2d 1312 (11th Cir.1988); *United States v. Griley*, 814 F.2d 967 (4th Cir.1987); *United States v. Chaparro–Almeida*, 679 F.2d 423 (5th Cir.1982); *United States v. Wolffs*, 594 F.2d 77 (1979); *United States v. Walden*, 490 F.2d 372 (4th Cir.), *cert. denied*, 416 U.S. 983, 94 S.Ct. 2385, 40 L.Ed.2d 760 (1974); *United States v. Cotton*, 471 F.2d 744 (9th Cir.1973); *United States v. Red Feather*, 392 F.Supp. 916 (D.S.D.1975); *United States v. Jaramillo*, 380 F.Supp. 1375 (D.Neb.1974); *Moon v. Alaska*, 785 P.2d 45 (Alaska App.1990); *People v. Burden*, 411 Mich. 56, 303 N.W.2d 444 (1981); *Hildebrandt v. State*, 507 P.2d 1323 (Okla.Crim.App.1973); *Hu-*

---

**2.** One of the motions to suppress at trial asserted that this scenario constituted both a warrantless search and a warrantless apprehension. Although not raised on appeal, we note our rejection of this contention. *See Lewis v. United States*, 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966); *United States v. Ruiz–Altschiller*, 694 F.2d 1104 (8th Cir.1982); *United States v. White*, 660 F.2d 1178 (7th Cir.1981); *State v. Cantrell*, 426 So.2d 1035 (Fla.App.1983); *see generally* 3 LaFave *Search and Seizure*, sec. 8.2(m) at 221–228 (1987) and 2 LaFave *Search and Seizure*, sec. 6.1(c) at 581–585 (1987).

**3.** A stipulation of fact, entered into explicitly for the purpose of establishing the facts applicable to the defense motions to suppress the fruits of the search, plainly states that both the local police *and* the AFOSI agents executed the warrant. Thus, the government conceded that the AFOSI agents actively participated in the execution of the civilian search warrant.

**4.** *See* Meeks, *Illegal Law Enforcement: Aiding Civil Authorities in Violation of the Posse Comitatus Act*, 70 Mil.L.Rev. 83, 90 (1975).

**5.** *Chandler v. United States*, 171 F.2d 921, 936 (1st Cir.1948).

*bert v. State,* 504 P.2d 1245 (Okla.Crim. App.1972). For the most part, however, as the need for increased cooperation between military and civilian law enforcement authorities rose steadily, military and civilian officials were left to interpret the Act and its parameters without a great deal of guidance. The proper application of that aging statute to modern-day circumstances became a matter cloaked in considerable ambiguity.

■ Recognizing this problem, and spurred mainly by the belief that law enforcement cooperation was critical to effectively combatting the "rising tide of drugs" being smuggled into the United States, Congress attempted to clarify the intent of the Posse Comitatus Act through the enactment of a new Chapter in Title 10 of the United States Code[6] —Chapter 18, Military Cooperation With Civilian Law Enforcement Officials, consisting of 10 U.S.C. sections 371–378. This Chapter addressed various aspects of such cooperation and, with minor exception, simply codified then-existing interpretations of the Act. The National Defense Authorization Act, Fiscal Year 1989 (P.L. 100–456, Sept. 29, 1988), amended those provisions to authorize an even greater degree of cooperation as a reflection of the escalating "war" against drugs[7]. As presently written, 10 U.S.C. § 375 provides:

> The Secretary of Defense shall prescribe such regulations as may be necessary to ensure that the provision of any support ... to any civilian law enforcement official under this chapter does not include or permit direct participation by a member of the Army, Navy, Air Force, or Marine Corps in a *search and seizure,* an arrest, or other similar activity unless participation in such activity by such member is otherwise authorized by law.

(Emphasis added.) In compliance with the direction contained above, the Secretary of Defense issued appropriate regulations in

Title 32, Part 213 of the Code of Federal Regulations (CFR).[8] The prohibition against direct participation in a search or seizure is duly included at 32 C.F.R. 213.- 10(a)(3)(ii) in a section addressing restrictions on direct assistance to civilian law enforcement officials. However, in the immediately preceding section, *permissible* direct assistance is addressed:

> The following activities are *not* restricted by the Posse Comitatus Act ... *notwithstanding direct assistance to civilian law enforcement officials.*
>
> (i) Actions that are taken for the *primary purpose of furthering a military* or foreign affairs *function of the United States, regardless of incidental benefits to civilian authorities* ... Actions under this provision may include the following, depending on the nature of the DoD interest and the specific action in question:
>
> (A) Actions related to *enforcement of the Uniform Code of Military Justice* (10 U.S.C. Chapter 47).
>
> \*　\*　\*　\*　\*　\*
>
> (E) Protection of DoD personnel, *DoD equipment,* and official guests of the Department of Defense.
>
> (F) Such other actions that are undertaken primarily for a military or foreign affairs purpose.

32 C.F.R. 213.10(a)(2) (Emphasis added). Our review of the statutes in issue, their legislative history, and the available case law convinces us that the CFR provision quoted above constitutes an accurate interpretation of the statutory prohibitions and contains the key to their proper application, i.e., that the prohibitions contained in the Posse Comitatus Act and in 10 U.S.C. § 375 do not now, nor were they ever intended to, limit military activities whose *primary purpose* is the furtherance of a military (or foreign affairs) function, regardless of benefits which may incidentally accrue to civilian law enforcement. Clearly, and as spe-

---

**6.** *See* 1981 U.S.Code Cong. and Adm.News, p. 1781, 1785.

**7.** Changes to 10 U.S.C. § 375 did not involve or affect that part of the provision pertinent to the issue presently before this Court.

**8.** 32 C.F.R. 213.1–213.11.

cifically recognized in the CFR provision, enforcement of the UCMJ is one such function and the protection of DoD equipment is another.[9]

■■■ Applying these principles to the case at hand, we find that neither the Posse Comitatus Act nor 10 U.S.C. § 375 has application to the actions of the AFOSI agents who, in assisting local police authorities in the execution of a civilian search warrant in the course of a joint investigation of a military member for the theft of both private and military property, had as their primary purpose the enforcement of the UCMJ and the recovery of stolen military property. Although the search warrant was grounded on the presence of stolen non-military property, the military had concurrent jurisdiction over that underlying offense and exclusive jurisdiction over the suspected theft of military property, the presence of which in appellant's house was a reasonably foreseeable possibility.

■■■ While other issues attend the search and seizure, as discussed below, we find no violation of the Posse Comitatus Act or 10 U.S.C. § 375.[10]

### Fourth Amendment

As the second prong of the assigned error, appellate defense counsel contend that the AFOSI agents, instead of assisting in the execution of the civilian search warrant, actually conducted a completely independent search for military property. As appellate defense counsel assert, correctly we believe, there is a distinct difference between (1) evidence obtained as a result of

"plain view" during the course of a lawful search and (2) evidence obtained as a result of an active independent search for items not listed in the search warrant.

■■■ Inherent in our conclusion as to the first prong of the assigned error, we believe that the AFOSI agents could properly be invited by their civilian counterparts to accompany them during execution of the search warrant. *United States v. Washington*, 782 F.2d 807 (9th Cir.1986); *United States v. Wright*, 667 F.2d 793 (9th Cir.1982). As noted above, we see no "posse comitatus" problem and, from a Fourth Amendment standpoint, appellant's privacy interests had already been effectively dissolved by the duly issued search warrant; the addition of AFOSI agents to the search "team" did not, in and of itself, represent any significant additional intrusion upon appellant's privacy. Further, our review of the circumstances convinces us that the civilian search was a serious investigative action conducted in good faith and not simply a "subterfuge" or "pretext" search fabricated to mask the AFOSI agents' lack of probable cause to search for military property. *See United States v. Washington, supra; United States v. Johnson*, 707 F.2d 317 (8th Cir.1983); *United States v. Hare*, 589 F.2d 1291 (6th Cir. 1979). However, in joining the search "team", the AFOSI agents were subject to the same restrictions and constraints which governed the civilian officers in executing the search. Thus, while the AFOSI agents could properly accompany the civilian detectives and seize items under the "plain

---

**9.** Stated another way, it is clear from the legislative history of these statutes that their purpose was to preclude the imposition of military force on the civilian citizenry as a means of enforcing civil law. Military personnel, already subject to military authority, were certainly never envisioned as the primary beneficiaries of these prohibitions. For many years, while the military's jurisdiction over offenses committed by military members was limited to those evincing a distinct "service connection," military personnel did arguably enjoy the protections of the Posse Comitatus Act as to offenses which were beyond the judicial grasp of the military justice system. Even those cases, however, often posed a troublesome "posse comitatus" problem when the military, although without criminal jurisdic-

tion, had significant interest and responsibility in responding to misconduct through various administrative processes.

**10.** Even if we were to find that the participation by AFOSI agents in the execution of the search warrant constituted a violation of the Posse Comitatus Act and/or 10 U.S.C. § 375, we would nevertheless reject appellant's suggestion that exclusion of the evidence is the appropriate remedy. *See United States v. Bacon*, 851 F.2d 1312 (11th Cir.1988); *United States v. Griley*, 814 F.2d 967 (4th Cir.1987); *United States v. Hartley*, 796 F.2d 112 (5th Cir.1986); *United States v. Walden*, 490 F.2d 372 (4th Cir.), *cert. denied*, 416 U.S. 983, 94 S.Ct. 2385, 40 L.Ed.2d 760 (1974).

view" doctrine, *see Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), they did not have authority to conduct an independent search for items outside the scope of the warrant, i.e., military property.

The issue that presents itself, then, is whether the items of military property seized by the AFOSI agents during the execution of the civilian search warrant were the result of legitimate "plain view" or, instead, the result of an improper independent search.

■ However, before this Court can consider the merits of this issue, as framed by appellate defense counsel, we must first determine whether this issue was raised at the trial below and, thereby, preserved for consideration on appeal. If it was not raised below, it has been waived. R.C.M. 905(e).

Of the several written motions to suppress submitted by the defense counsel at trial, one such motion (Appellate Exhibit IX) comes close to the issue at hand. By its own terms, that motion sought to suppress:

> all evidence seized by the Officers of the SAPD [San Antonio Police Department] and the AFOSI which were not specifically listed on the Bexar County, Texas search warrant or within the plain view of the officers *while they stood in the front room area of the apartment* and for which they had probable cause to believe was evidence of a crime or was contraband.

(Emphasis added.) After a "FACTS" section recounting applicable facts on the motion, defense counsel further explained the basis for the motion in a section entitled "ARGUMENTS AND AUTHORITY":

> The warrant issued by the Bexar County, Texas magistrate limited the scope of the search to be conducted to the specific items listed on the warrant. This information came from two AFOSI agents who had seen the items *in the front room area of [appellant's] apartment.* Officer Warner typed the specific items on the warrant form for the magistrate to sign. In doing so he was requesting

to search the apartment for *only those items.* Of course as police officers they would also be allowed to make seizures of items in plain view for which they had probable cause to believe was [sic] evidence of a crime. Here, the officers of the SAPD and AFOSI entered the apartment, split up and began searching the entire apartment at random for any item that they might consider to be contraband or evidence of a crime. They did not restrict themselves to the four corners of the warrant. Their search went well beyond the magistrate's order as to purpose. Also, because the items specifically set out on the warrant were viewed in the front room area of the apartment the search went beyond the magistrate's order as to area to be searched. If the items were located in this front room area the search should have begun and ended with this area of the house.

(Emphasis added.) A fair reading of these passages, together with a review of the arguments of counsel on this motion at trial, convinces us that the issue raised at trial is materially distinct from the issue being raised on appeal. The issue raised at trial was whether the searching officials exceeded the scope of the warrant by invading areas of appellant's apartment beyond which they needed to go in order to fulfill the stated purpose of the warrant. Summarized, the trial defense counsel's argument is: (1) the warrant listed *only* items located in the front room area of appellant's apartment; (2) those items should have been seized immediately; and (3) the search should have ended at that point, with the possible exception of items within "plain view" of the front room area.

■ The trial defense counsel's motion hinged on the premise that the items listed on the face of the warrant were limited to those items seen by the AFOSI agents in the front room area of appellant's apartment at the time of his apprehension. Were that the case, his point would be well taken. Once the items named in a search warrant have been found and seized, the authority to search terminates. *See, e.g., United States v. Feldman*, 366 F.Supp. 356

(D.Haw.1973); *United States v. Highfill,* 334 F.Supp. 700 (E.D.Ark.1971). However, that premise was faulty. During testimony on the motion, the civilian detective who acquired the warrant testified that the items listed on the warrant, in addition to items actually seen by the AFOSI agents, included *other* items known to be missing from the Atari store as a result of the same burglary. Furthermore, as the trial counsel argued and as the evidence of record reflects, the search did *not* in fact result in the recovery of all the items listed in the warrant. Thus, the authority to search did *not* terminate after the recovery of the items in appellant's front room area. This fact, together with the trial judge's determination that the search warrant was supported by probable cause, effectively defeated this particular motion to suppress.

We are convinced, then, that the Fourth Amendment issue raised in the trial defense counsel's motion to suppress is completely distinct from the one being raised on appeal. Given the thrust of the issue raised at trial, the prosecution was able to successfully defeat the motion simply by producing the testimony of the civilian detective as to the nature of the items listed on the search warrant. On the other hand, had appellate counsel's issue been raised at trial, the prosecution would have been on notice of the need to produce evidence detailing the precise manner in which the items of military property were discovered and seized.[11] This evidence was not produced, however, because that particular issue was not raised. As a result, the record of trial is devoid of the particular information which we would need in order to address the merits of appellate counsel's issue. That, in turn, is precisely the reason why such issues must be preserved at trial before they can be cognizable on appeal. Accordingly, we find the second prong of the assigned error to have been waived. R.C.M. 905(e).

Having examined the record of trial, the assignment of error, and the government's reply thereto, we conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Accordingly, the findings of guilty and the sentence are

AFFIRMED.

Chief Judge HODGSON and Judge SPILLMAN concur.

---

11. The "plain view" doctrine, with its corollary issues involving probable cause, "mere inspection", "immediate apparency", and "inadvertent discovery", has developed into a rather complex Fourth Amendment arena. *See generally Arizona v. Hicks,* 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987); *Texas v. Brown,* 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983); *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Stanley v. Georgia,* 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969); *Warden v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). As a result, when a purported "plain view" seizure is challenged, resolution of the issue will ordinarily require a detailed examination of the circumstances immediately attending the seizure.