218

UNITED STATES, Appellee,

v.

Paul A. THOMPSON, Senior Airman,
U.S. Air Force, Appellant.

No. 64,433.
ACM 27675.

U.S. Court of Military Appeals.

Argued March 12, 1991.

Decided Sept. 18, 1991.

Certiorari Denied Jan. 27, 1992.

See 112 S.Ct. 972.

For Appellant: *Captain David D. Jivi-
den* (argued); *Lieutenant Colonel Jeffrey
R. Owens* (on brief); *Colonel Richard F.
O'Hair, Captain Mark R. Land; Captain
Dawn R. Bates* (legal intern).

For Appellee: *Captain Morris D. Davis*
(argued); *Lieutenant Colonel Brenda J.
Hollis* (on brief); *Major Paul H. Black-
well, Jr.*

*Opinion of the Court*

EVERETT, Senior Judge:

Notwithstanding not-guilty pleas, a gen-
eral court-martial with members convicted
appellant of larceny (2 specifications),
wrongful sale of military property, arson,
and housebreaking, in violation of Articles
121, 108, 126, and 130, Uniform Code of
Military Justice, 10 USC §§ 921, 908, 926,

and 930, respectively. The court members sentenced appellant to a dishonorable discharge, confinement for 10 years, total forfeitures, and reduction to the lowest enlisted grade. The convening authority approved these results, with a minor modification to one larceny specification; and the Court of Military Review affirmed. 30 MJ 570 (1990).

On appellant's petition, we granted review of two issues questioning whether a search of appellant's off-base apartment by agents of the Air Force Office of Special Investigations (OSI) and seizure of military property during that search violated the Posse Comitatus Act (18 USC § 1385) or the Fourth Amendment to the Constitution of the United States.[1] Under the facts of this case, we conclude that the agents did not run afoul of either provision; so we affirm.

I

A

The pertinent facts were set out in the decision below as follows:

> Appellant was a suspect in the theft of computer equipment from Wilford Hall Medical Center and the burglary/arson of an Atari computer store in the civilian community. As a result, agents of the Air Force Office of Special Investigations (AFOSI) and local arson detectives embarked on a cooperative effort to investigate appellant for these offenses. On 20 October 1988, Agent Adams, an AFOSI agent acting in an undercover role, went to an informant's residence where appellant sold him several pieces of computer equipment suspected to be items missing from Wilford Hall.
>
> On 26 October, Agent Adams and an AFOSI computer specialist, Agent Forche, again acting in an undercover capacity, arranged to meet appellant at his residence for the purpose of possibly buying additional equipment. Their plan was to observe any other stolen computer equipment in appellant's residence, to possibly make another "buy" of such equipment, and to signal other agents at the appropriate time to apprehend appellant. Although no purchase took place on that occasion, Agent Adams did activate an electronic device which signalled a third AFOSI agent to come to the door and apprehend appellant, which he did.
>
> Immediately after appellant's apprehension, Agents Adams and Forche briefed a local arson detective on the various items of computer equipment which they had observed in appellant's residence and which matched the description of equipment missing from the Atari computer store. Based on this information, the arson detective secured a search warrant from a municipal court magistrate. The warrant was executed that same evening by three members of the local police department and four AFOSI agents. The local police seized various items of computer equipment associated with the Atari store as well as several "tools" believed to have been used to effect the burglary. The AFOSI agents, in the course of their participation in the search, came across and seized some computer equipment and various other items believed to be government property.

30 MJ at 571–72 (footnotes omitted).

B

The Posse Comitatus Act, 18 USC § 1385, prescribes:

> Whoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army or the Air Force as a posse comitatus or otherwise to execute the laws shall be fined not more than $10,000 or imprisoned not more than two years, or both.

Appellant complains that the OSI investigators here violated this constraint—that is, that they acted to execute the laws of Texas—when they searched appellant's off-base apartment; reported their findings to

1. Thompson made timely trial motions that pre-served these grounds of appeal.

a civilian detective who then used that information to obtain a civilian search warrant; accompanied the detective and other civilian authorities when the warrant was executed; and themselves seized government property found during the search. Instead, we conclude that appellant has misread this statute and related provisions of law.

### C

■ The Posse Comitatus Act is a century-old law that was passed to prevent the then-common use of military forces to help civilian authorities enforce civil laws.[2] Three years ago, Congress addressed the intent behind the Posse Comitatus Act and considered its relevance to the modern-day struggle against the smuggling of illegal drugs into the United States. Whether to clarify the Posse Comitatus Act or to amend it, 10 USC § 375 provides:

> The Secretary of Defense shall prescribe such regulations as may be necessary to ensure that the provision of any support ... to any civilian law enforcement official under this chapter does not include or permit direct participation by a member of the Army, Navy, Air Force, or Marine Corps in a search and seizure, an arrest, or other similar activity unless participation in such activity by such member is otherwise authorized by law.

Pursuant to this mandate, the Secretary of Defense promulgated implementing regulations in Part 213 of Title 32, Code of Federal Regulations. While one section of these regulations does prohibit direct participation by military personnel in searches and seizures as assistance to civilian officials, *see* 32 C.F.R. § 213.10(a)(3)(ii),[3] the

preceding section speaks to *permissible* direct assistance:

> The following activities are not restricted by the Posse Comitatus Act ... notwithstanding direct assistance to civilian law enforcement officials.
>
> (i) Actions that are taken for the primary purpose of furthering a military or foreign affairs function of the United States, regardless of incidental benefits to civilian authorities. This provision must be used with caution, and does not include actions taken for the primary purpose of aiding civilian law enforcement officials or otherwise serving as a subterfuge to avoid the restrictions of the Posse Comitatus Act. Actions under this provision may include the following, depending on the nature of the DoD interest and the specific action in question:
>
> (A) Actions related to enforcement of the Uniform Code of Military Justice (10 U.S.C. Chapter 47).
>
> *        *        *
>
> (C) Actions related to the commander's inherent authority to maintain law and order on a military installation or facility.
>
> *        *        *
>
> (E) Protection of DoD personnel, DoD equipment, and official guests of the Department of Defense.
>
> (F) Such other actions that are undertaken primarily for a military or foreign affairs purpose.

32 C.F.R. § 213.10(a)(2).

Thus, the relevant question upon which resolution of appellant's complaint depends is: What was "the primary purpose of" the OSI agents' involvement in the search and seizure at appellant's off-base apartment?

---

**2.** Some of the history of this Act is discussed in Siemer and Effron, *Military Participation in United States Law Enforcement Activities Overseas: The Extraterritorial Effect of the Posse Comitatus Act,* 54 St. John's L. Rev. 1, 18–43 (Fall 1979).

**3.** In full, this section provides:

    (3) *Restrictions on direct assistance.* Except as otherwise provided in this enclosure, the prohibitions on use of military personnel "as a posse comitatus or otherwise to execute the

laws" prohibits the following forms of direct assistance:

    (i) Interdiction of a vehicle, vessel, aircraft or other similar activity.

    (ii) A search or seizure.

    (iii) An arrest, stop and frisk, or similar activity.

    (iv) Use of military personnel for surveillance or pursuit of individuals, or as informants, undercover agents, investigators, or interrogators.

Specifically, was their "primary purpose" to enforce the Uniform Code of Military Justice, to protect military equipment, or to achieve either of the less specific military-focused goals referred to in the negotiations between the police agencies; or was it, instead, to aid civilian law enforcement officials or otherwise to serve as a subterfuge to evade the Posse Comitatus Act?

Under the facts of this case, we believe that the answer is clear. OSI agents were deeply involved in their own investigation—which included *both* on-base thefts of military property and off-base thefts of civilian property and related offenses; and they were involved well *before* the complained-of search. It is true that the civilian warrant was for seizure of civilian property and that it was obtained by civilian agents for that purpose. Nonetheless, as the Court of Military Review noted, the military had concurrent jurisdiction over the crimes committed in the civilian community, *see Solorio v. United States*, 483 U.S. 435, 107 S.Ct. 2924, 97 L.Ed.2d 364 (1987), so it was entirely logical for the military agents to accompany the civilian police when the latter executed their warrant to search for the fruits of the civilian thefts.

The evidence leaves no doubt that the military agents had conducted a long-running military investigation of Thompson for the thefts of *both* the military and the civilian equipment. The coincidence of the civilian investigation into the *civilian* thefts and the military agents' cooperation with the civilian police, for their mutual benefit, in *that part* of the military investigation does not transform the "primary purpose" of the military activity into anything but what it had been all along: An effort to enforce the Uniform Code of Military Justice—an effort that, tellingly, resulted in a court-martial for *all* of appel-

lant's offenses, rather than a civilian criminal trial.[4]

### D

■ A final caveat is in order. By our holding, we do not imply that the evidence would be inadmissible even if a violation of the Posse Comitatus Act or the Secretary's regulation had occurred. Invocation of the exclusionary rule for Fourth Amendment violations does not necessarily imply that a statutory or regulatory violation requires similar treatment. *Cf. United States v. Caceres*, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979); *United States v. McGraner*, 13 MJ 408 (CMA 1982).

### II

Appellant's Fourth Amendment objection actually is a twofold complaint, each to some degree related to his Posse Comitatus Act theory.

### A

Appellant argues that the OSI agents used their so-called joint investigation—which appellant contends violated the Posse Comitatus Act—to evade the Fourth Amendment barrier to the agents' entering his apartment. He points to the fact that the OSI agents had been advised before the questioned search that they lacked probable cause to search appellant's apartment for fruits of the suspected thefts of military equipment. From this, he argues that the agents' unlawful accompaniment of their civilian colleagues in the search of his apartment in violation of the Posse Comitatus Act—an intrusion in which the OSI agents were looking for the military property, not just the civilian property upon which the warrant was based—eviscerated

---

4. We acknowledge appellant's implied argument that the mere fact that the suspected crime is proscribed by the Uniform Code of Military Justice does not preclude violation of the Posse Comitatus Act. If the facts of a particular case indicate that the "primary purpose" of military investigators was to aid civilian law enforcement, then such a subterfuge of the Posse Comitatus Act will not be countenanced. *See* 32

C.F.R. § 213.10(a)(2)(i). Those, however, are not the facts of this case. Indeed, in the context of the full picture of the development of this investigation and considering its ultimate resolution—a court-martial for *all* known offenses—the investigation might fairly be characterized as one in which the *civilian* authorities aided the *military* agents, rather than vice versa.

appellant's Fourth Amendment right that the intrusion be based upon a probable-cause determination.

While there are other conceptual notions underlying this theory that must be addressed, *infra,* essentially this aspect of appellant's Fourth Amendment argument relies upon the hypothesis that the OSI agents' entry violated the Posse Comitatus Act—a hypothesis which we already have rejected. Without this premise, the logic leading to his conclusion is infirm.

### B

■ Appellant submits that the real purpose of the OSI agents in the intrusion was to search for the military property—property that was outside the scope of the warrant upon which the intrusion was based. Reduced to its essential components, appellant's argument quite clearly fails.

First, the intrusion by the civilian police was pursuant to a lawfully issued warrant in a good-faith search for the fruits of the civilian thefts.

Second, in light of the ongoing military investigation into these same thefts and the concurrent jurisdiction over those crimes, this lawful intrusion did not mystically become unlawful just because the civilian officers invited the military agents along. *See United States v. Washington,* 782 F.2d 807, 813, and 816 (9th Cir.1986); *United States v. Wright,* 667 F.2d 793, 796–97 (9th Cir.1982). Other than his unpersuasive reasoning related to the Posse Comitatus Act, appellant has cited us to no contrary authority, and we know of none. As the Court of Military Review correctly reasoned:

As noted above, we see no "posse comitatus" problem and, from a Fourth Amendment standpoint, appellant's privacy interests had already been effectively dissolved by the duly issued search warrant; the addition of the AFOSI agents to the search "team" did not, in and of itself, represent any significant additional in-

trusion upon appellant's privacy. Further, our review of the circumstances convinces us that the civilian search was a serious investigative action conducted in good faith and not simply a "subterfuge" or "pretext" search fabricated to mask the AFOSI agents' lack of probable cause to search for military property.

30 MJ at 574.

■ Third, while lawfully on the premises, the OSI agents were not required to close their eyes to any of the *military* property that they saw in plain view in the course of a search for the *civilian* property. *See Horton v. California,* 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990); *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). While the scope of a search must be limited to the confines of the warrant, other evidence that is found during a properly confined search need not be ignored. *See Arizona v. Hicks,* 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987); *United States v. Jacobs,* 31 MJ 138, 145, 147–49 (CMA 1990) (Everett, C.J., dissenting). The mere fact that one or more of the searching officers might have hoped for just such an eventuality [5] is not of decisional importance. *Horton v. California, supra.*

To summarize, these fundamental, critical factors underpin our rejection of this aspect of appellant's Fourth Amendment claim: First, all officials were lawfully on the premises. Second, all were engaged in a good-faith search for the civilian property listed on the warrant, over which there was concurrent jurisdiction and in which there was mutual interest. *Compare United States v. Sanchez,* 509 F.2d 886 (6th Cir. 1975) (intrusion by federal agent at invitation of state agents to help execute state search warrant unlawful where federal agent had no interest in property listed in state warrant), *with United States v. Hare,* 589 F.2d 1291, 1296 (6th Cir. 1979) (where federal Alcohol, Tobacco, and

---

**5.** This was raised during testimony of one witness during the investigation under Article 32, Uniform Code of Military Justice, 10 USC § 832,

but was never asserted during any testimony at trial, so it cannot be considered. *United States v. Bethea,* 22 USCMA 223, 46 CMR 223 (1973).

Firearms (ATF) agents entered premises in legitimate, probable-cause search for weapons pursuant to lawful warrant, entry at same time by Drug Enforcement Administration (DEA) agents at invitation of ATF agents to search for drugs, without probable cause, lawful because search for weapons not "a pretense fabricated to mask the DEA's lack of probable cause"). *See also* 2 W. LaFave, *Search and Seizure,* § 4.11(e) at 357 n.91 (2d ed.1987). Finally,

**6.** The record reflects that the searching officers did not find all of the civilian property listed in the warrant in appellant's living room—the first room they entered—so the search continued beyond the living room to the rest of the apartment. Thus, a reasonable inference from this testimony—in the absence of utterly any indication to the contrary—is that the military property, which was located in areas other than the living room, was found in plain view during the lawful search under the civilian warrant.

Although we do not rely upon waiver to resolve this particular aspect of the Fourth Amendment issue, as did the Court of Military Review, *see* 30 MJ 570, 575–76 (1990), we do

there is no evidence that the physical scope of the search exceeded the limits of the warrant.[6]

## III

The decision of the United States Air Force Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judge COX concur.

note that defense counsel's motion at trial was a bit ill-defined as to this ground. *See* Mil.R.Evid. 311(d)(2)(A), (d)(3), and (e)(3), Manual for Courts–Martial, United States, 1984. A more precise objection—if, indeed, defense counsel did have such an objection—logically would have led to a fuller development of the facts affecting this issue. Accordingly, we are more inclined than we otherwise might be to find that, based on the evidence just mentioned and the reasonable inferences drawn therefrom, the Government carried its burden of proving by a preponderance of the evidence that the challenged evidence was lawfully discovered, *see* Mil.R.Evid. 311(e)(1).