UNITED STATES, Appellee

v.

Dana E. DRAYTON, Airman First Class
U.S. Air Force, Appellant.

No. 93–0309.

CMR No. 28903.

U.S. Court of Military Appeals.

Argued Feb. 3, 1994.

Decided Sept. 22, 1994.

For Appellant: *Captain Robert A. Parks* (argued); *Lieutenant Colonel Frank J. Spinner* (on brief); *Colonel Terry J. Woodhouse* and *Colonel Jay L. Cohen.*

For Appellant: *Major Jules D. Silberberg* (argued); *Colonel Richard L. Purdon, Colonel Jeffery T. Infelise, Captain Timothy G. Buxton* (on brief); *Lieutenant Colonel Thomas E. Schlegel* and *Captain Carlos L. McDade.*

*Opinion of the Court*

WISS, Judge:

A general court-martial comprised of a military judge sitting alone convicted appellant of absence (5 days) from his unit without authority, failure to go to his appointed place of duty (2 specifications), wrongful use of cocaine, and wrongful communication of a threat to injure a person (2 specifications). *See* Arts. 86, 112a, and 134, Uniform Code of Military Justice, 10 USC §§ 886, 912a, and 934, respectively. He was sentenced to a bad-conduct discharge, confinement for 20 months, total forfeitures, and reduction to the lowest enlisted grade. The convening authority approved the sentence as adjudged, and the Court of Military Review affirmed in an unpublished opinion.

This Court granted review to consider appellant's assertion that he "was unfairly prejudiced by the misleading SJA [staff judge advocate] recommendation." More specifically, appellant contends, substantially as he did in the Court of Military Review, that the recommendation prepared by the SJA pursuant to RCM 1106(a), Manual for Courts-Martial, United States, 1984, "contains several errors," Final Brief at 3, as follows: 1) The recommendation erroneously reports that he was convicted of two offenses of which actually he was acquitted; 2) the recommendation inappropriately characterizes appellant's service as "Unsatisfactory"; and 3) the recommendation improperly "attempted to sustain the finding of guilty to the cocaine use charge, Charge III, by reference to information from outside the record." *Id.* at 4.

Now, after fuller reflection, we affirm. We will address each alleged basis of error *seriatim.*

### Erroneous Report of Findings

■ This is the second case that we have heard this term dealing with an SJA's inaccurate report of the findings of guilty in his recommendation to the convening authority. Unlike the other case, here the recommendation's inaccuracy was appellant's reported conviction of two offenses (resisting apprehension and a third communication of a threat to injure) of which in fact he had been acquitted. *Cf. United States v. Diaz,* 40 MJ 335 (CMA 1994) (recommendation failed to report two specifications of which accused had been convicted). Of course, the convening authority's purported implicit approval of these findings was a nullity.[1] *Cf.* RCM 1107(c).

■ The question remains, however, whether appellant suffered prejudice from the erroneous report that he had been convicted of these other two crimes, in addition to those accurately reported. The misrepresentation appears in block 27 on the form-front page of the recommendation that contains a "Synopsis of Charges and Specifications." Appellant acknowledges that later, when the SJA in discourse summarizes the pleas and findings in paragraph 37e, he accurately points out these acquittals (although he does not state the nature of the offenses); appellant claims nonetheless that the confusion caused by this ambiguity likely tainted him in the convening authority's eyes.

Defense counsel's response to the SJA's recommendation failed to mention either the initial incorrect report (block 27) or the confusion that is claimed on appeal to have been caused by the later (para. 37e) correct report. In the absence of plain error—which we do not find, especially in light of the later correct report on the findings—this failure waived any appellate complaint. RCM 1106(f)(6).

### Character of Appellant's Service

In block 9 of the form-front page of the SJA's recommendation, appellant's "Character of Service" is reported to have been "Unsatisfactory." In contrast, appellant points to Air Force Form 65, Transmittal of Court-Martial Charges, in which his commander had opined in block 9, "Character of service prior to these charges was honorable." Somehow, appellant argues that the SJA's apparently inconsistent view was error.

---

1. Since the general court-martial order that published the results of trial and the convening authority's action correctly reflected these acquittals, however, a new order is unnecessary.

We are constrained to notice, however, that appellate counsel utterly fails to deal forthrightly with the same commander's notation that appellant had received two prior nonjudicial punishments under Article 15, UCMJ, 10 USC § 815—one for driving while intoxicated, fleeing the scene of an accident, and making a false official statement; and the other for failure to go to place of duty. As well, counsel does not candidly confront the following comparatively lengthy "Description of Accused's Service" by appellant's commander, which only *ends* in the short sentence onto which he has latched:

Airman Drayton's performance has deteriorated over time to a point that it was unacceptable. He lost his NCO status for failing to maintain acceptable standards of conduct, bearing and behavior. He failed to meet assigned appointments and set a poor leadership example. Due to off-duty incidents including altercations involving assault, Airman Drayton has failed to be marginally productive and he is unable to perform his primary duties. Airman Drayton has readily accepted a broad spectrum of punishments, but these rehabilitative efforts have been futile. A long history of behavior modification attempts, beginning in 1986 after he arrived from technical school, indicate that the only alternative left is to eliminate Airman Drayton from the U.S. Armed Forces. Character of service prior to these charges was honorable.

We only can speculate as to what appellant's commander intended by the last sentence. We have no need to speculate, however, as to his holistic assessment of appellant's service that is vividly reflected by everything that precedes that sentence. Appellant's complaint about the SJA's characterization of his service as unsatisfactory, thus, is wholly spurious.

### Reference to Evidence Outside the Record of Trial

Our consideration of appellant's final claim—that the SJA improperly utilized evidence from outside the record of trial to sustain the guilty verdict of cocaine use—involves the interrelationship of four post-trial documents: the recommendation, defense counsel's response thereto, appellant's own written letter to the convening authority seeking clemency, and the SJA's addendum to his recommendation.

The recommendation is dated September 18, 1990. In paragraph 37, captioned "Synopsis and Sufficiency of the Evidence," the SJA included the following paragraph:

b. Earlier in June Airman Drayton showed another airman assigned to transition flight (Airman Basic Wayne Walker) a clear plastic vial which contained a white powdery substance. Airman Drayton told Airman Walker that he and his "... boys were going to do this 'jammy.'" Airman Walker, familiar with drugs and the vernacular of the drug culture, took Airman Drayton's statement to mean that he and his friends were going to take cocaine which was contained in the vial. Based on the information provided by Airman Walker, Airman Drayton was questioned by the OSI. On 7 June 1990, Airman Drayton voluntarily provided a sample of his urine for testing at the Air Force Drug Testing Laboratory, Brooks Air Force Base, Texas. Analysis of Airman Drayton's urine revealed the presence of a metabolite unique to cocaine.

On September 27, defense counsel responded to the recommendation. Among other matters discussed, defense counsel pointed out that the evidence as to what appellant allegedly had said to Airman Walker appeared "[n]owhere in the record of this trial on the Merits...." (In fact, Walker had testified at the Article 32, UCMJ, 10 USC § 832, hearing but was not called at trial.) Defense counsel continued:

This evidence was not placed before the fact finder in any form and was not considered by the fact finder during this trial. The SJA's advice is, therefore erroneous and misleading because you are being asked to evaluate this case based upon non-existent evidence which is highly prejudicial.

On October 5, appellant wrote to the convening authority asking for clemency. In

considerable detail, appellant described a party which he had attended back home in Pennsylvania over the Memorial Day weekend. The party had included many of his friends (some of whom were "big time drug dealers" but in other respects "really good people in general"), and everyone had contributed something to eat or drink. Many of his friends, instead of liquor, had brought "cakes, brownies, and pecan pies," which he had thought "was kind of unusual." Others at the party "did their thing (drugs)," but he had not; neither had anyone asked him to because they knew he would not.

Appellant continued that, on June 7, he was questioned by agents of the Air Force Office of Special Investigations, voluntarily offered a urine sample at their request, and consented to a search of his belongings. When, the next day, he told one of his friends of this, his friend said, "You know that those cakes you were eating had some cocaine (kerosene base) in it, and I almost died." Appellant asked others from the party to come forward with this information, but all declined.

As for his failure to make all this known at trial, appellant explained:

> While in pretrial confinement [on the absence charge] my cousin came to visit me from Pennsylvania. He's one of the six guys involved in this drug dealing click [sic] and he said to me, "you don't want to mention any of their names. I came up here personally because the other guys think that you're going to open your mouth about what happened. I'm your cousin, and I'm telling you do not let any names slip out of your mouth." I knew what he meant but I still asked him why. He told me if anyone was going to interfere with your making money what would you do? I said I would stop them. He said do you understand what I'm saying. He explained to me how hard it was for him to sit there and listen to them talk about me and what would happen if I said anything. My cousin also told me that they might be coming up to see my court-martial and that if I needed anything to call him.

Appellant concluded his clemency letter by urging that, had he known he had taken cocaine, he never would "have consented to a urinalysis.... To me that would be really stupid to know you've done drugs and still consent to a urine sample." He unsuccessfully had asserted the same logic at trial, in addition to attacking the reliability of the urinalysis.

Finally, on October 9, the SJA signed an addendum to his earlier recommendation. In pertinent part, the SJA acknowledged that the Walker evidence had come from the Article 32 hearing, not from trial. But he contended that use of such extra-transcript material was permissible under RCM 1107(b)(3)(B)(iii); the only condition was that, if knowledge of such material is not chargeable to the accused, he must be notified of it and given "an opportunity to rebut." Additionally, he discussed appellant's revelations in his clemency letter. In closing, he concluded that "[n]othing contained [in defense counsel's response to the recommendation or in the clemency letter] convinces me to modify the opinions and recommendations expressed in the staff judge advocate's recommendations." As mentioned earlier, the convening authority's action was promulgated on October 10, 1990.

We agree with the Court of Military Review that the SJA erred by reporting testimony from the record of the Article 32 investigation in an apparent effort to sustain the sufficiency of the evidence of appellant's guilt of cocaine use. Unpub. op. at 3. The SJA's argument in his addendum that RCM 1107(b)(3)(B)(iii) permits the convening authority to consider extra-record matters adverse to the accused, *accord* RCM 1106(d)(5) (SJA recommendation may include matters outside the record that are appropriate), reflects an imprecise analysis.

■■ As the SJA pointed out, such matters may be included in the recommendation and may be considered by the convening authority in the exercise of the latter's statutory post-trial responsibility. That post-trial responsibility, however, no longer includes weighing the factual sufficiency of the evidence of guilt. *See* Art. 60(c)(3), UCMJ, 10

USC § 860(c)(3) (1983). *But cf.* para. 15–5b(2), Air Force Regulation 111–1 (30 Sep. 1988) (recommendation must state conclusion on sufficiency of the evidence). Where, though, consideration of the *sufficiency of the trial evidence* of guilt is undertaken voluntarily, that consideration perforce must be *limited to the trial evidence. United States v. Mann*, 22 MJ 279, 280 n. 2 (CMA 1986) ("The staff judge advocate cannot go outside the record to sustain a finding of guilty."); *United States v. Bethea*, 22 USCMA 223, 225, 46 CMR 223, 225 (1973) ("Undeniably, evidence not presented at the trial cannot be used to support or reverse a conviction," *quoting United States v. Lanford*, 6 USCMA 371, 379, 20 CMR 87, 95 (1955).). *See also United States v. Thompson*, 33 MJ 218, 222 n. 5 (CMA 1991) ("This [fact] was raised during testimony of one witness during the investigation under Article 32, ..., but was never asserted during any testimony at trial, so it cannot be considered. [Citing *Bethea*.]"), cert. *denied,* —— U.S. ——, 112 S.Ct. 972, 117 L.Ed.2d 137 (1992).

If this were the end of events, appellant's argument might have some weight. As recited above, however, appellant subsequently wrote a lengthy letter to the convening authority in which he offered substantial detail to one of the trial defenses that might be inferred from the record—that he did not knowingly ingest cocaine. As well, he offered a forceful explanation as to why he had not been forthcoming with this evidence at trial.

The clemency petition, however, did not purport to attack the sufficiency of the trial evidence to sustain the guilty finding. More obviously, it sought to add to the trial evidence in an effort to persuade the convening authority, as a matter of executive clemency, to ignore the trial evidence and to set aside the cocaine conviction. Had the SJA properly omitted the Walker evidence from his earlier recommendation, in this posture surely it would have been proper to fight fire

with fire by referring to it in his later addendum in order to rebuff the credibility of appellant's new post-trial explanation of innocence.

■ Under these circumstances, then, we hold that appellant suffered no prejudice from the erroneous inclusion of the Walker evidence in the post-trial recommendation. The trial evidence of appellant's guilt of this crime was substantial; and the same material would have been includable in the later addendum, in any event, to rebut appellant's eleventh hour, blatant effort at a post-trial trial in the office of the convening authority.[2]

The decision of the United States Air Force Court of Military Review is affirmed.

Judges COX, CRAWFORD, and GIERKE concur.

SULLIVAN, Chief Judge (dissenting):

The convening authority impermissibly considered the extra-record evidence presented in the staff judge advocate (SJA)'s addendum to the post-trial recommendation. As Judge Wiss writes:

Where, though, consideration [by the convening authority] of the *sufficiency of the trial evidence* of guilt is undertaken voluntarily, that consideration perforce must be *limited to the trial evidence. United States v. Mann*, 22 MJ 279, 280 n. 2 (CMA 1986) ("The staff judge advocate cannot go outside the record to sustain a finding of guilty."); *United States v. Bethea*, 22 USCMA 223, 225, 46 CMR 223, 225 (1973) ("Undeniably, evidence not presented at the trial cannot be used to support or reverse a conviction," *quoting United States v. Lanford*, 6 USCMA 371, 379, 20 CMR 87, 95 (1955).). *See also United States v. Thompson*, 33 MJ 218, 222 n. 5 (CMA 1991) ("This [fact] was raised during testimony of one witness during the investigation under Article 32, but was never asserted during any testimony at trial, so it cannot be considered. [Citing *Bethea*]"), cert. denied, —— U.S.

2. Curiously, appellant offered no explanation in his clemency letter as to why he was comfortable revealing the details of his story at that time

when, shortly before, he was so fearful of doing so at his court-martial.

——, 112 S.Ct. 972, 117 L.Ed.2d 137 (1992).

40 MJ at 451. I commend the majority opinion for supporting this correct legal proposition with ample case law.

However, the majority cites no authority for its implied holding that extra-record evidence may be included in the SJA's adden-

dum in rebuttal to extra-record evidence of innocence* presented in appellant's clemency petition to the convening authority. I decline to join this holding and would remand this case for a new recommendation and action by a general court-martial convening authority. *United States v. Mann* and *United States v. Bethea*, both *supra; see also United States v. Thompson, supra.*

---

* The majority states that "[t]he clemency petition, however, did not purport to attack the sufficiency of the trial evidence to sustain the guilty finding.... [Instead] it sought to add to the trial evidence in an effort to persuade the convening authority, as a matter of executive clemency, to ignore the trial evidence and to set aside the cocaine conviction." 40 MJ at 451. Again, no authority is cited for the proposition that a post-trial assertion of a defense is not intended to "attack the sufficiency of the trial evidence to sustain the guilty finding."