*703 OPINION OF THE COURT
PEARSON, Senior Judge.
Court members convicted appellant of using methamphetamine based on a positive urinalysis, and sentenced him to a bad-conduct discharge, 4 months confinement, and forfeiture of $200 pay per month for 4 months. He contends the military judge erred in answering a court member’s question during sentencing and the posh-trial processing of his case was flawed. We agree as to the second issue and grant relief by disapproving the forfeiture. In doing so, we hold that the convening authority approves the sentence reported to him in the post-trial staff judge advocate’s recommendation, including any addendum, absent compelling evidence to the contrary. See R.C.M. 1106.
SENTENCING

Background

In sentencing, appellant presented evidence that his young son would undergo surgery in 2½ weeks. The child’s doctor recommended that appellant be present for the surgery and for two weeks thereafter. During argument, defense counsel reminded the members of this evidence and suggested a sentence of hard labor without confinement instead of “prison.” See R.C.M. 1003(b)(7).
After the members deliberated for awhile, the President of the court submitted the following question to the military judge concerning confinement:
Are there procedures that allow a prisoner to apply for a humanitarian or temporary release to take care of family emergencies and that sort of thing, and an appropriate authority determines that is okay or approves it?
Over appellant’s objection, the judge replied that “the Convening Authority has discretion to defer confinement.” See R.C.M. 1101(c).
Appellant contends the military judge improperly instructed on a collateral matter and violated Rule for Courts-Martial (R.C.M.) 1005(e)(3) by telling the members they could rely on future mitigating action by the convening authority. We disagree under the circumstances of this case.
As a general rule, courts-martial should determine the appropriateness of a particular punishment without regard to its collateral consequences. United States v. Quesinberry, 12 U.S.C.M.A. 609, 31 C.M.R. 195 (1962); United States v. Lee, 43 M.J. 518 (A.F.Ct.Crim.App.1995). Even so, the Court of Appeals for the Armed Forces has held that “it is certainly not error for the judge to answer the members’ questions [about a collateral consequence] if an accused agrees United States v. Griffin, 25 M.J. 423, 424 (C.M.A.) (emphasis in original), cert, denied, 487 U.S. 1206, 108 S.Ct. 2849, 101 L.Ed.2d 886 (1988). The twist here, is that appellant did not agree, but strenuously objected. However, we still conclude appellant is not entitled to relief.

Discussion

We review a military judge’s decision to answer a court member’s question about the collateral consequences of a sentence using an abuse of discretion standard. See United States v. Henderson, 29 M.J. 221 (C.M.A.1989). We conclude the military judge did not abuse her discretion in this case when she answered the members’ question about deferment of confinement, a collateral administrative aspect, or consequence, of that punishment.
A party is responsible for the reasonable inferences one may make of the sentencing evidence it presents. Cf. United States v. Hallum, 31 M.J. 254 (C.M.A.1990) (defense evidence opened door to uncharged misconduct rebuttal). Here, we find one — perhaps the biggest — reasonable inference to draw from the evidence about the child’s surgery is the court should not confine appellant past February 13th so he could be present as the doctor recommended. The military judge astutely recognized the importance of giving guidance on the precise issue appellant raised so the members could make an informed decision on whether to confine appellant and for what length of time. We commend her decision; we do not condemn it.
Finally, we note the interesting distinction between judge alone and members sentencing when applying the collateral conse *704 quences doctrine. If this case had been tried before a military judge sitting alone, the judge would have known about the authority to defer confinement, just like judges are aware of most collateral consequences of any sentence. Although judges are aware of the consequences of the sentences' they fashion, the collateral consequences doctrine forces us to let court members flounder along in ignorance unless they ask the question. We should be leery to fault a judge who answers the mail. See United States v. Boone, 42 M.J. 308, 314 (1995) (Sullivan, C.J., dissenting).
POST-TRIAL PROCESSING
Appellant argues the SJA’s addendum did not list appellant’s clemency submissions as attachments or state the convening authority “must consider” them, fool-proof methods we established to comply with post-trial processing requirements. See United States v. Foy, 30 M.J. 664 (A.F.C.M.R.1990) (en banc); see also United States v. Crawford, 34 M.J. 758 (A.F.C.M.R.) and cases cited therein, pet denied, 36 M.J. 202 (C.M.A.1992). Appellant also argues a staff summary sheet the SJA used to forward the post-trial documents to the convening authority contained new matter which was not served on appellant for comment. See R.C.M. 1106(f)(7). We agree the post-trial processing of appellant’s case was flawed but not exactly in the context appellant advances.

The Addendum,

Although the SJA’s addendum did not list appellant’s clemency submissions as attachments, it did specifically detail them in the first paragraph. However, neither the initial SJA recommendation nor the subsequent addendum contained the magic words “must consider.” See United States v. Komorous, 33 M.J. 907, 912 (A.F.C.M.R.1991). We do not find the omissions fatal in this case. Appellate government counsel submitted a copy of the SJA’s staff summary sheet forwarding the case, including appellant’s submissions, to the convening authority. The staff summary sheet bears the convening authority’s signature. Consequently, we are convinced the convening authority considered appellant’s submissions before taking action on the case. See Crawford.

The Staff Summary Sheet

Any document which the SJA uses to supplement the post-trial recommendation must be served on the defense counsel when it contains new matter. “Any document” includes an administrative staff summary sheet which summarizes and forwards the record with accompanying post-trial documents. United States v. Leslie, 16 M.J. 714 (A.F.C.M.R.1983). “New matter” includes facts and information from outside the record. Komorous, 33 M.J. at 910.
In his post-trial clemency submission, appellant argued for a reduction in confinement. The SJA opposed clemency and stated in his forwarding staff summary sheet that appellant’s scheduled release date from confinement was May 6, 1994. The SJA did not serve defense counsel with a copy of the staff summary sheet.
According to appellant’s clemency submission, he received a one-day deferment of confinement to attend his son’s surgery. Taking the deferment into account, the reported scheduled release date would result in appellant’s confinement for a period shorter than the adjudged 4 months. Thus, the May 6th date was either a (1) typographical or mathematical error, or (2) reflected what we commonly understand as “good time,” that is an administrative credit on the term of confinement for good behavior. In any event, the scheduled release date was “new matter” as it reported new information from outside the record of trial concerning an issue appellant raised in clemency. Consequently, the staff summary sheet should have been served on counsel for comment.

Error in SJA’s Recommendation Reporting the Sentence

The SJA’s recommendation erroneously stated appellant was sentenced to $400 in monthly forfeitures instead of $200. Appellant stated the correct amount of $200 in his reply to the recommendation. See R.C.M. 1106(f)(4). Undismayed, the SJA repeated his error in the staff summary sheet again advising the convening authority that the monthly forfeiture was $400. In his ac *705 tion of April 22, 1994, the convening authority merely stated “the sentence is approved.” The general court-martial order reporting the action also stated the monthly forfeiture as $400. On May 6, 1994, Air Force officials asked the convening authority to prepare a new order correcting the forfeiture. Unfortunately, over 18 months later, we still do not have a corrected order.
The question now arises what monthly forfeiture did the convening authority approve? In the absence of compelling evidence to the contrary, we hold the convening authority approves the sentence reported to him in the SJA’s recommendation, including any addendum. Cf. United States v. Diaz, 40 M.J. 335, 342 (C.M.A.1994) (absent “compelling evidence” otherwise, the convening authority “implicitly approves the findings as they are reported to him in the recommendation of the SJA”). Compelling evidence may include, but is not limited to, (1) comments by an accused in post-trial clemency submissions which correct errors in the SJA’s recommendation or addendum, if served; (2) the SJA’s correct advice in the addendum or other document forwarding the case; or (3) the convening authority’s approval or disapproval of specific portions of a sentence. See United States v. Drayton, 40 M.J. 447 (C.M.A.1994).
For example, the SJA’s recommendation and addendum may omit that a bad-conduct discharge was adjudged. If the convening authority states “the sentence is approved and, except for the bad-conduct discharge, will be executed,” compelling evidence would probably exist that the convening authority did indeed approve the discharge.
Here, the government’s documents uniformly state the monthly forfeiture as $400. Since the staff summary sheet was not served on defense counsel for comment, he didn’t have an opportunity to renew his correction. Consequently, we conclude the evidence shows the convening authority improperly approved a greater sentence than was adjudged. See R.C.M. 1107(d)(1).

The Remedy

Normally, we set aside actions where the addendum or other post-trial document contains “new matter,” and return the record for a new. action. However, we have previously voiced our opinion that we may correct the error ourselves in an appropriate case, see, e.g., Komorous, 33 M.J. at 911-912, and have done so, see United States v. Haynes, 28 M.J. 881 (A.F.C.M.R.), pet. denied, 29 M.J. 314 (C.M.A.1989). See also Drayton. We believe this is a case for appellate correction both for the “new matter” and forfeiture errors.
First, we are convinced the convening authority considered appellant’s clemency matters before taking action. Thus, the convening authority performed his statutory function. Article 60(c)(2), UCMJ, 10 U.S.C. § 860(c)(2); United States v. Craig, 28 M.J. 321 (C.M.A.1989).
Second, appellant asks for relief in the form of a new action or disapproval of the forfeitures, a remedy we deem reasonable. Appellate defense counsel realizes, as do we, that appellant has no realistic chance of receiving relief from his bad-conduct discharge in light of his poor disciplinary record, and reducing confinement already served is no remedy in fact. Thus, the only portion of the sentence which would yield true relief is the forfeiture. Likewise appellate defense counsel recognizes, as do we, that Air Force convening authorities, almost without exception, never grant sentence reductions on remands for new actions, recognizing of course that correcting an error in the action is not clemency.
Third, we continually see numerous post-trial processing errors in records of trial. According to our statistics, post-trial processing errors accounted for eighteen percent of the cases in which we granted relief in 1994. As of October 1995, this fraction had risen to forty-four percent. Consequently, we need to take appellate action which promotes accurate post-trial processing of cases in the future. Apparently, laying out fool-proof appellate guidance on how to do it and returning cases for new actions have not solved this problem. Compare Crawford with Foy. In fact, returning cases for new actions may even foster an attitude of “no harm, no foul.” Perhaps, meaningful *706 appellate relief will spur more attention to post-trial requirements.
CONCLUSION
The findings of guilty are correct in law and fact. Reassessing the sentence in light of the post-trial processing errors, we disapprove the forfeiture in its entirety and find the sentence, as reassessed, appropriate. Accordingly, the findings of guilty and sentence, as reassessed, are
AFFIRMED.
BECKER and MORGAN, JJ., concur.