UNITED STATES, Appellee,

v.

Donald A. LEAL, Staff Sergeant
U.S. Air Force, Appellant.

No. 95–0330.
Crim. App. No. 30723.

U.S. Court of Appeals for
the Armed Forces.

Argued Jan. 4, 1996.

Decided July 30, 1996.

For Appellant: *Captain Michael L. McIntyre* (argued); *Colonel Jay L. Cohen* (on brief).

For Appellee: *Major LeEllen Coacher* (argued); *Colonel Jeffery T. Infelise* and *Colonel Thomas E. Schlegel* (on brief).

*Opinion of the Court*

GIERKE, Judge:

A general court-martial at March Air Force Base, California, composed of officer and enlisted members convicted appellant, pursuant to his pleas, of attempted use of lysergic acid diethylamide (LSD), in violation

of Article 80, Uniform Code of Military Justice, 10 USC § 880. The approved sentence provides for a bad-conduct discharge, confinement for 4 months, and reduction to the lowest enlisted grade. The Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion.

We granted review of the following issue: WHETHER THE STAFF JUDGE ADVOCATE ERRED, IN VIOLATION OF RCM 1106(f)(7) AND TO THE PREJUDICE OF APPELLANT, BY INCLUDING A NEW MATTER IN THE ADDENDUM TO THE SJA RECOMMENDATION AND FAILING TO SERVE APPELLANT WITH THE NEW MATTER IN ORDER FOR HIM TO RESPOND.

The staff judge advocate's post-trial recommendation (¶ 37a) included the following statements: "The accused has no prior convictions or Article 15s [*see* 10 USC § 815]. His record indicates excellent duty performance." After appellant was served with the post-trial recommendation, he submitted a clemency request, supported by 46 letters from two former commanders, several former supervisors and co-workers, appellant's wife and children, and several family members and friends of the family.

The Acting SJA submitted an addendum to the recommendation that included the following comment about appellant's clemency request:

The accused may be a great carpenter, but his crimes and the circumstances of his crimes are not those of the "exceptional NCO" his defense counsel touts him to be. Also in the record, but not admitted at trial, is a letter of reprimand the accused received on 26 June 1987 for use and purchase of marijuana in May and June 1985, as well as a copy of the apparent basis for that reprimand, the accused's 15 December 1986 confession to multiple uses of marijuana and one use of "speed" while stationed at Gila Bend....

The addendum was not served on appellant or his counsel. Appellant argues that the addendum should have been served on him for comment because it introduced "new matter." The Government argues, and the court below held, that the reprimand was not "new matter" because it was "between the 'blue covers'" of the record, even though the military judge rejected it as evidence. Unpub. op. at 3; Answer to Final Brief at 5. The Government argues that appellant is chargeable with everything "between the 'blue covers'" of the record, including documents like his letter of reprimand, which are offered in evidence but rejected. Finally, the Government argues that any error in not serving the addendum was harmless. Answer to Final Brief at 7.

RCM 1106(f)(7), Manual for Courts-Martial, United States (1994 ed.), authorizes the SJA to supplement the post-trial recommendation after receiving the comments of defense counsel. Nevertheless, the rule requires: "When new matter is introduced after counsel for the accused has examined the recommendation, however, counsel for the accused must be served with the new matter and given a further opportunity to comment." According to the Discussion to this Rule: "'New matter' includes discussion of the effect of new decisions on issues in the case, matter from outside the record of trial, and issues not previously discussed." It does not "include any discussion by the staff judge advocate or legal officer of the correctness of the initial defense comments on the recommendation."

■ We hold that discussing appellant's reprimand was "new matter" for two reasons: First, it was "matter from outside the record of trial." Not everything "between the 'blue covers'" is part of the record. *See United States v. Heirs*, 29 MJ 68, 69 (CMA 1989) (reference to accused's inadmissible statement during plea inquiry was "new matter"). Exhibits that are received in evidence and appellate exhibits are part of the record. On the other hand, "[e]xhibits ... which were marked for and referred to on the record but not received in evidence" must "be attached to the record" but are not part of the record. *Compare* RCM 1103(b)(2)(D)(v) *with* RCM 1103(b)(3)(B). To hold otherwise would permit counsel to make clearly inadmissible evidence part of "the

record" merely by offering it, knowing full well that it would be rejected. Rejected exhibits are attached to the record to facilitate appellate review of any subsequent attack on the ruling rejecting them. Thus, the letter of reprimand was not part of "the record," even though it was included "between the 'blue covers.'"

Second, the acting SJA's addendum introduced "issues not previously discussed." RCM 1106(f)(7), Discussion. In his original recommendation, the SJA noted the absence of previous convictions or nonjudicial punishment under Article 15 and "excellent duty performance," suggesting that appellant was a first offender. Only after receiving the clemency request did the acting SJA inject the issue of the significance of a 6–year–old letter of reprimand in determining an appropriate sentence.

The essence of post-trial practice is basic fair play—notice and an opportunity to respond. Unnecessary appellate litigation can be avoided if SJAs liberally construe the term "new matter." SJAs control the process. They can avoid multiple addenda and defense responses by limiting their responses to "a statement of agreement or disagreement with the matter raised by the accused[,]" without reciting additional facts or legal arguments. RCM 1106(d)(4).

A convening authority may consider adverse matters outside the record in deciding whether to grant clemency, if the accused is given an opportunity to be heard regarding those matters. RCM 1107(b)(3)(B)(iii). Because the reprimand was not mentioned in the initial recommendation and the addendum was not served on him, appellant did not have notice that the convening authority would be told about the reprimand. Appellant was deprived of an opportunity to deny, counter, or explain the reprimand or its underlying basis.

We reject the Government's harmless-error argument. The reprimand was for drug use, the same offense for which appellant was requesting clemency. Under the circumstances, "[w]e will not speculate on what the convening authority would have done if he had been presented with an accu-

rate record." *United States v. Jones*, 36 MJ 438, 439 (CMA 1993).

The decision of the United States Air Force Court of Criminal Appeals and the action of the convening authority are set aside. The record of trial is returned to the Judge Advocate General of the Air Force for submission to a different convening authority for a new recommendation and action.

Judge SULLIVAN and Senior Judge EVERETT concur.

CRAWFORD, Judge (concurring in part and dissenting in part):

The majority holds that when the defense seeks to distort the truth and this distortion is corrected by the staff judge advocate (SJA) with reliable evidence that is known to the defense, this correction is new matter that must be served on the defense.

The facts reveal that the SJA chose to label appellant's service record as "excellent." I cannot presume to know why that specific adjective was utilized. What I do know, however, is that the law as it currently exists does not give SJAs clear guidance as to what they may or may not include as part of the accused's personnel records. My research reveals no cases that allow an SJA to include in the recommendation to the convening authority any mention of items which are inadmissible at trial, *e.g.*, inadmissible reprimands, convictions, confessions, and so forth. In fact, the right to comment on an inadmissible reprimand in the first instance would probably be a surprise to most SJAs. Nonetheless, such a comment would be entirely consistent within the plain meaning of RCM 1106(d)(3)(B), Manual for Courts–Martial, United States (1994 ed.). *See also* RCM 1107(b)(3)(B)(iii).

With this lack of clear guidance, the SJA in this case faced numerous options: ignore the letter of reprimand, avoid characterizing appellant's service at all, mention appellant's prior service in neutral terms, or discuss the character of appellant's service as if the letter was not there—the path chosen. Given the ambiguous state of the law in this area, I cannot conclude that the SJA was incorrect

in initially mentioning appellant's service without reference to the inadmissible reprimand. Moreover, this certainly cannot be labeled an "ambush" on defense counsel by the SJA.

Prospectively, I agree with Judge Cox that the SJA may in the first instance introduce the inadmissible letter of reprimand. The majority also appears to hint that it would have been proper for the SJA to mention the letter of reprimand in the first instance. Judge Gierke states: "In his original recommendation, the SJA noted the absence of previous convictions or nonjudicial punishment under Article 15 [Uniform Code of Military Justice, 10 USC § 815] and 'excellent duty performance,' suggesting that appellant was a first offender." 44 MJ at 237. I agree that inadmissible reprimands and convictions could be relevant in the first instance. To hold otherwise would be to ignore the plain language of the Manual for Courts–Martial and keep SJAs in the dark as to the proper procedures to follow in their recommendations to the convening authority. In fact, considering the majority's broad holding as to new matter, to hold otherwise may also actually have the perverse consequence of encouraging SJAs to resort to putting a paperclip on an inadmissible document or uttering a quiet whisper to alert the convening authority to these matters known to the defense.

In any event, regardless of how one might characterize the actions of the SJA in the present case, we must also consider the actions of defense counsel here. Counsel should always accurately set forth the facts and explain any unfavorable facts or inferences. We know that the Constitution, the Manual for Courts–Martial, and the Military Rules of Evidence do not necessarily preclude admission of suppressed evidence when an individual seeks to distort the true picture of events. This emphasis on credibility has been an exception to the right to privacy, *United States v. Havens*, 446 U.S. 620, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980); the right of protection against self-incrimination, *see*

*e.g., Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); *United States v. Hale*, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975); the right to counsel, *Nix v. Whiteside*, 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986); and many other rules.

In *Michelson v. United States*, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948), the Supreme Court held that a 27–year old arrest could be used to dispel an incorrect picture of the defendant's good character. In the present case, the numerous instances of criminal conduct admitted by appellant may be employed to dispel the misleading statement by defense counsel that he is "an exceptional NCO."

The question presented by this case is whether the evidence of misconduct by appellant is new matter which must be served on the defense by the SJA.

If there is a new service, the defense would have the following options: (1) take out the language, "exceptional NCO"; (2) explain the letter of reprimand; or (3) make no changes. If effect, a new service requirement provides no incentive for defense counsel to be accurate, honest, and fulfill ethical obligations in the first instance.

The discussion to RCM 1106(f)(7) * provides:

> "New matter" includes discussion of ... matter from outside the record of trial, and issues not previously discussed. "New matter" does not ordinarily include any discussion by the staff judge advocate or legal officer of the correctness of the initial defense comments on the recommendation.

Despite the assertions of defense counsel, appellant was not an "exceptional NCO," and counsel knew it. Appellant's personnel records show that not only was the SJA's correction of this statement not based on "matter from outside the record of trial," but also it was not based on matter outside the province of knowledge of the accused and his counsel. Similarly, just as new matter does not include the SJA's discussion of the cor-

---

* The rules concerning service of the staff judge advocate recommendation and service of new matters are the result of decisions from this Court. *See United States v. Narine*, 14 MJ 55 (1982), and *United States v. Goode*, 1 MJ 3 (1975).

rectness of defense counsel's comments on the recommendation, it should not include correction of a misstatement or misrepresentation of an undisputed matter known to the defense.

At the real heart of this case are the ethical obligations of counsel. Ethical issues often remind me of the saying by Mark Twain: "Everybody talks about the weather, but nobody does anything about it." We should not ignore the opportunity presented to us now to do something about counsel's ethical obligations.

When counsel sets forth evidence which is incomplete and misrepresents the character of appellant or distorts the evidence, the SJA may use reliable evidence within the "blue covers" of the record to rebut it. There is no obligation to serve this rebuttal as new matter. Contrast this to a situation where the SJA's office disputes, based upon unknown documentation, appellant's submission to the convening authority, *United States v. Jones,* 36 MJ 438 (CMA 1993), or where the SJA's addendum sets forth his unexplained personal investigations to dispute the accused's accusations, *United States v. Norment,* 34 MJ 224 (CMA 1992). In those situations there is. new matter within the meaning of RCM 1106(f)(7).

In this case defense counsel understandably sought to paint a picture of appellant as a good family man and a servicemember with a good military record. In doing so he urged suspension of appellant's punitive discharge and reduction of his sentence. While defense counsel must zealously represent his client, he may not fail to deal forthrightly with the records in a case. Although counsel can and should "take the sting out" of any prior disciplinary action and other unfavorable information, he has an ethical obligation to be forthright with the tribunal and convening authority by acknowledging the existence of this information.

Rule 3.3 of the Model Rules of Professional Conduct—Candor Toward the Tribunal—requires counsel to be forthright in representing servicemembers. It provides:

(a) A lawyer shall not knowingly:

(1) make a false statement of material fact or law to a tribunal;

(2) fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client;

\* \* \*

(d) In an *ex parte* proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer which will enable the tribunal to make an informed decision, whether or not the facts are adverse.

*See Annotated Model Rules of Professional Conduct* 329 (2d ed.1992).

Standard 4–1.2(f), ABA Standards for Criminal Justice, ABA Defense Function Standards, states: "Defense counsel should not intentionally misrepresent matters of fact or law to the court." *See ABA Standards for Criminal Justice: Prosecution Function and Defense Function* (hereafter *ABA Standards* ) 121 (3d ed.1993).

Standard 4–8.1(b) provides:

Defense counsel should present to the court any ground which will assist in reaching a proper disposition favorable to the accused. If a presentence report or summary is made available to defense counsel, he or she should seek to verify the information contained in it and should be prepared to supplement or challenge it if necessary. If there is no presentence report or if it is not disclosed, defense counsel should submit to the court and the prosecutor all favorable information relevant to sentencing. . . .

*Id.* at 233. The following commentary interprets this rule:

Counsel may not present facts that are known to be false in a manner that creates an inference that they are true. Counsel may not, for example, present facts concerning the defendant's character that would suggest to the judge that the defendant does not have a prior record of crime if it is known that the defendant has such a record and that fact has not been disclosed to the court.

*Id.* at 235–36. These standards and the commentary also apply before the convening authority.

Credibility of counsel is important because reputations spread fast—it is generally known who can be trusted and who cannot be. Thus, there is the obligation to present candidly the positions in the best light possible. In effect, counsel's obligation to the tribunal and to the convening authority may very well be greater than counsel's obligation to an accused. *Nix v. Whiteside*, 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986).

Even while setting forth the defense weaknesses in the best light, counsel can still zealously represent a client. As in any case, counsel must decide upon the best arguments on a client's behalf based on the law of probabilities and the facts that are given. That is all I ask of counsel.

Our Rules of Evidence specifically state that the purpose of military law is truthfinding. Mil.R.Evid. 102, Manual, *supra*. *See also* H. Rothwax, *Guilty: The Collapse of Criminal Justice* (1996). Counsel have the obligation to accept responsibility for the evidence that has been offered and the reasonable inferences which can be drawn from other evidence known to exist. We stated in *United States v. Drayton*, 40 MJ 447 (1994), that, if the SJA had not mentioned in the original recommendation evidence from outside of the record, "it would have been proper to fight fire with fire by referring to it in his later addendum in order to rebuff the credibility of appellant's new post-trial explanation of innocence." *Id.* at 451.

In any event, the majority should at a minimum apply the harmless-error standard. I seriously doubt that there will be a suspension of the discharge when appellant attempted to use LSD on numerous occasions between May 15 and May 30, 1992. An investigation completed in late 1986 or early 1987 revealed that appellant had also purchased and subsequently used and smoked marijuana. Finally, attached to a resulting letter of reprimand was a sworn handwritten confession from appellant admitting to use of marijuana on several other occasions. I can see no possibility of harm under these circumstances.

I would affirm the decision below.

COX, Chief Judge (dissenting in part and concurring in the result):

I disagree with the majority opinion that "new matter" within the meaning of RCM 1106(f)(7), Manual for Courts–Martial, United States (1994 ed), can be defined in any way by tying the definition to the record of trial. Such a categorical definition seems to me to unnecessarily limit, thus inadvertently subvert, the purpose of the Rule. I would hold that "new matter" in a staff judge advocate (SJA)'s supplemental recommendation is "any matter" not previously discussed in the original recommendation. Logic dictates that if it is not old, it must be new.*

In this case, the original SJA's recommendation contained the following:

> The accused has no prior convictions or Article 15s. His record indicates excellent duty performance.

Expanding upon the SJA's kind words, appellant's counsel submitted a request for clemency in which he made a remarkable case on behalf of his client to ask the convening authority to suspend the execution of the discharge adjudged at trial. Obviously, given this state of the record, appellant's chances for clemency may have looked pretty

---

* My personal preference would be for staff judge advocates to serve everything upon the accused. However, the quid pro quo for this notice would be that I would give the accused very limited time to respond to supplemental recommendations except by leave of the convening authority. Such a practice comports with fundamental notions of due process, *i.e.* notice of the evidence against an accused and an opportunity to be heard. It also comports with fundamental procedural rules such as are found in any court of law: Argument, reply, rebuttal to reply, etc. Lastly, it would eliminate the issues presented in these types of cases.

Military due process does not sanction trials by ambush. We give military members accused of crimes the right to hear and debate the evidence against them. That is all this case is about: The right to be heard. It is not about distortion of the facts. It is not about a lack of defense counsel candor or breach of ethics. It is about due process of law for a military accused.

good, after all he had presented an overwhelming case for clemency as well as the aforementioned kind words of the SJA. This state of affairs called for drastic action by the acting SJA if he was to save the sentence in the case. Thus, he offered the following rebuttal in his response to appellant's request for clemency:

> The accused may be a great carpenter, but his crimes and the circumstances of his crimes are not those of the "exceptional NCO" his defense counsel touts him to be. Also, in the record, but not admitted at trial, is a letter of reprimand the accused received on 26 June 1987 for use and purchase of marijuana in May and June 1985, as well as a copy of the apparent basis for that reprimand, the accused's 15 December 1986 confession to multiple uses of marijuana and one use of "speed" while stationed a Gila Bend.

This response was two-fold: First, it characterized appellant's crimes and offenses. Second, it brought out a 6–year–old letter of reprimand based upon evidence of drug use some 8 years before. However, there is absolutely nothing new about this matter. The existence of the letter of reprimand was well known to appellant and his attorney. The letter of reprimand was part of appellant's official personnel file. The existence of the letter could have been discussed by the SJA in his original recommendation. And,

most importantly, even though the letter was not admitted as evidence in the court-martial, there is nothing unfair about sharing the information with the convening authority. The letter of reprimand is part and parcel of appellant's military career.

What was unfair, however, was the Acting SJA'S ambush. The tone, tenor, and bottom line of the supplemental recommendation is 180–degrees from the tone and tenor of the original recommendation. In the initial recommendation, the SJA said appellant's record indicated *excellent duty performance.* In his *ex parte* communication, the Acting SJA completely contradicts the earlier conclusion.

In my judgment, the Acting SJA's comments were fair and accurate. Furthermore, although I do not share Judge Crawford's view about defense counsel's ethics, the approach to the convening authority certainly invited the attack by failing to make mention of any adverse personnel information in appellant's record. Nevertheless, the acting SJA was required to serve his comments upon appellant. Because it may be a close call on whether to suspend the punitive discharge in this case, I would order the record returned for a new recommendation and convening authority's action. Thus, I concur in the result.