UNITED STATES, Appellant

v.

Charles M. HANEY, Jr., Major,
U.S. Air Force, Appellee.

No. 93–0157.
CMR No. 29000.

U.S. Court of Appeals for
the Armed Forces.

Argued Nov. 1, 1995.

Decided Dec. 17, 1996.

For the Accused: *Kevin J. Barry* (argued); *Lieutenant Colonel Joseph L. Heimann* (on brief).

For the United States: *Major LeEllen Coacher* (argued); *Colonel Joseph L. Heimann* and *Lieutenant Colonel Michael J. Breslin* (on brief).

*Opinion of the Court*

EVERETT, Senior Judge:

Appellant was tried by a general court-martial composed of members at Peterson Air Force Base, Colorado, on July 19, 1990. Contrary to his pleas, the members found appellant guilty of one specification each of use of marijuana and cocaine, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. He was sentenced to dismissal, confinement for 8 months, and forfeiture of $750.00 per month for 12 months. After a post-trial session under Article 39(a), UCMJ, 10 USC § 839(a), had addressed—and found no merit in—allegations that a member was sleeping during the trial, the convening authority approved the sentence. In August 1992, the Court of

Military Review[1] affirmed the findings and sentence in an unpublished decision.

In our initial review of this case, we set aside the decision below and remanded it for consideration of new issues raised initially before this Court. 38 MJ 229 (1993). In May 1994, the court below, in another unpublished opinion, reaffirmed the findings and sentence. Appellant again petitioned this Court, and we granted review of this issue:

WHETHER THE CONVENING AUTHORITY ACTION WAS DEFECTIVE AND VOID, WHERE THE CONVENING AUTHORITY WAS ON NOTICE THAT APPELLANT WAS NOT REPRESENTED BY CONFLICT–FREE COUNSEL, DURING MUCH OF THE POST–TRIAL PHASES OF THE TRIAL, AND WHERE THE STAFF JUDGE ADVOCATE RECOMMENDATION AND SUBSEQUENT ADDENDA WERE NEVER SERVED ON APPELLANT'S (CONFLICT FREE) SUBSTITUTE DETAILED DEFENSE COUNSEL WHO HAD BEEN APPOINTED TO REPRESENT APPELLANT AT THE POST–TRIAL 39(a) SESSION.

This granted issue involves questions regarding the satisfactory service of the initial staff judge advocate (SJA)'s recommendation on the original defense counsel and the service of two addenda to this recommendation on the substitute defense counsel. Resolution of these matters requires this Court to address two sub-issues:

1. WHETHER THE ORIGINAL TRIAL DEFENSE COUNSEL HAD PRIOR KNOWLEDGE OF AN ALLEGATION OF INEFFECTIVENESS OF COUNSEL, SO THAT AN ATTORNEY–CLIENT CONFLICT PRECLUDED COUNSEL FROM RESPONDING TO THE INITIAL SJA'S RECOMMENDATION AND THEREBY REQUIRED SERVICE OF THIS RECOMMENDATION ON SUBSTITUTE DEFENSE COUNSEL.

2. WHETHER EITHER OF THE TWO ADDENDA TO THE SJA'S RECOMMENDATION RAISE "NEW MATTER" THAT REQUIRED SERVICE ON THE SUBSTITUTE DEFENSE COUNSEL.

Unfortunately, because of a factual gap in the record, we are unable to resolve the first sub-issue. Senator Sam Ervin, while serving as a Justice on the North Carolina Supreme Court, addressed in this manner an appellate court's problem in dealing with a factually deficient record:

The unfortunate turn taken by this case in the court below calls to mind a bit of advice received by the writer of this opinion from his father, who was a member of the North Carolina bar for sixty-five years. When the writer embarked on the practice of law, his father gave him this admonition: 'Always salt down the facts first; the law will keep.' The trial bench and bar would do well to heed this counsel. In the very nature of things, it is impossible for a court to enter a valid judgment declaring the rights of parties to litigation until the facts on which those rights depend have been 'salted down' in a manner sanctioned by law.

*Erickson v. Starling*, 235 N.C. 643, 71 S.E.2d 384, 395–96 (1952).[2]

Because important facts regarding the first sub-issue are not "salted down," a remand to establish a factual record normally would be required. *See United States v. Cornelious*, 41 MJ 397 (1995). However, here this action to resolve the first sub-issue is unnecessary. Our resolution of the second sub-issue requires a new SJA recommendation and convening authority action to remedy the errors in failing to serve the substitute defense counsel with the first addendum to the SJA's recommendation, which raised "new matter," and in failing to serve this same counsel with the second addendum, which discussed a new issue decided in the post-trial hearing.

[1]. *See* 41 MJ 213, 229 n. * (1994).

[2]. In the television series of yesteryear, Dragnet, Sgt. Joe Friday used to put it this way, "Just the facts, ma'am, just the facts!"

## FACTUAL BACKGROUND

On November 15, 1989, appellant, an officer with over 19 years of unblemished officer/enlisted service, randomly was selected to provide a urine sample for drug testing. During the test procedures, appellant told the drug test monitor that he believed his sample would come back positive because of the prescribed drugs he was taking. Subsequently, his urinalysis test report was positive for marijuana and cocaine.

Before and during trial appellant denied knowing use of illegal drugs. He asserted that a combination of innocent circumstances might explain his positive test result. According to appellant, he took prescription and non-prescription drugs, including opiates and barbiturates, for the continuing treatment of effects of injuries he had received in an accident years earlier, and also he used exotic herbal teas. The members rejected appellant's explanation, however, and convicted him of the alleged drug use. The granted issue arises primarily from questions about the effectiveness of the assistance of counsel in light of the possible conflicts of interest on the part of two lawyers involved in appellant's defense.

### A

The second Court of Military Review opinion concluded that "there is some confusion as to whether Captain W[atson] was detailed as defense counsel...." Unpub. op. at 3. This confusion is quite understandable.

According to the record of trial, Captain Koza alone was detailed as appellant's counsel. As Captain Koza had been transferred prior to trial, the military judge properly informed appellant of his right to have his detailed counsel present, and appellant waived Koza's presence.[3] Captain Willner, the individual military counsel, appeared alone in court to represent appellant.

Captain Watson, as the base area defense counsel, consulted and assisted the defense in trial preparation, took confidence from appellant, and collected clemency material. However, he never entered an appearance in court as a detailed counsel. Nonetheless, Captain Willner states in his affidavit that

"Capt Watson was detailed to the case...." In his affidavit, Captain Willner also explains that the decision not to have Captain Watson sit at counsel table during the trial was based on "our recognition that trial counsel or a court member might ask Col Smith why he was willing to testify as a character witness considering that he had preferred the charges. His answer would have been that *one of the defense counsel [Captain Watson]* had advised him to sign the charges." (Emphasis added.)

When the prosecution called Captain Watson as a witness regarding a proper preferral, Captain Willner informed the judge that Captain Watson "has worked with me in preparing for this case. He has also taken confidences from Major Haney."

In a post-trial letter to the convening authority, appellant expressly challenged "the trial strategy [Captain Watson] helped develop or the assistance he provided...." He further asserted that Captain Watson "was reluctant to invalidate his own work, since he was the prosecutor in April." Notwithstanding this confusion as to Captain Watson's professional relationship with appellant, the court below found that (a) appellant was fully aware of Captain Watson's prior involvement as the base chief of military justice and as the officer before whom appellant's commander had sworn to the charges and (b) appellant had expressly requested Captain Watson to assist his individual military counsel. Accordingly, the court below ruled that no actual conflict of interest existed regarding Captain Watson's performance. Unpub. op. at 4.

### B

The events concerning the role of Captain Willner are equally confusing. On September 24, 1990, the SJA completed his initial recommendation and served appellant. On September 25, 1990, the SJA served Captain Willner.

On October 26, 1990, the SJA prepared and forwarded to the convening authority the first addendum to his initial recommendation.

---

3. Captain Willner was promoted to Major after trial, but he will be referred to as Captain throughout this opinion to avoid confusion.

Without indicating the date of their receipt in the SJA's office, the addendum included these documents that the defense had submitted:

1) Captain Willner's defense request for clemency, which included 34 attachments (approximately 59 pages) and addressed appellant's claim of innocence, 19 years of exceptional service, medical problems, and family stresses. The clemency request is dated October 4. However, on October 4 and October 12, the defense had requested extensions to file clemency matters; and the convening authority had granted the defense until October 25 for this purpose. Thus, the actual date of receipt is uncertain.

2) Appellant's request for release and/or a new trial, dated October 25, 1990, which included 6 attachments (approximately 63 pages.) This document questioned the advice of counsel that Haney waive a proper preferral of the charges. It asserted that there "were many problems with the evidence that was presented by my attorney and the manner in which he presented what was submitted and what was withheld." Appellant implied that Watson might have intentionally failed to present appellant's evidence of good character because Captain Watson "was responsible for bringing charges against me [and] was reluctant to invalidate his own work since he was the prosecutor in April. I cannot, now, accept that the trial strategy he helped develop or the assistance he provided were in good faith." Appellant argued that a new trial was required because of "the possible ineffective counsel provided to me." Appellant also referred specifically to a letter, dated October 24, from his wife to the convening authority, regarding evidence that had not been used at trial.

3) Appellant's wife's letter to the convening authority (with two attachments, approximately 4 pages), which had been submitted directly and not through the area defense counsel. Mrs. Haney alleged that she and appellant had difficulty in working both with Captain Willner and with Captain Watson. She asserted that "our defense lawyers seem to be working harder for the prosecution than for us, their clients." She explained that counsel had failed to introduce evidence and call defense witnesses.

4) Captain Willner's submission of RCM 1105/1106, Manual for Courts–Martial, United States, 1984, matters, dated October 23, 1990, with three attachments (approximately 9 pages.)

(This is not a quotation.)

In his first addendum, the SJA explained that defense counsel and appellant had asserted errors, including that appellant "received ineffective assistance of counsel" and that "a juror was asleep during a portion of the trial." As to the former, that addendum concludes, "I find from the record that Major Haney received a vigorous defense and was competently represented by Captain Willner, his trial defense counsel. *Captain Watson was not a counsel in the case.* ..." (Emphasis added.) Reasoning that the assertion—supported by two affidavits—that a member of the court-martial had been sleeping during a portion of the trial "presents a significant problem," the SJA recommended that a post-trial session be convened to address this issue. However, the SJA did not serve defense counsel with a copy of this addendum to the recommendation.

On October 29, 1990, the convening authority, in line with the SJA's suggestion, ordered a post-trial hearing as to whether any court member had been sleeping during any critical portion of the trial.

On October 31, 1990, at the opening of the post-trial hearing, Captain Willner moved to withdraw because of appellant's allegations of ineffective assistance of counsel. Willner asserted that appellant's request for release and/or new trial dated October 24, 1990, appeared to incorporate his wife's letter of October 24. After the military judge had appellant affirm his dissatisfaction with Captain Willner and his loss of confidence in his attorney's abilities, the judge ruled that this lack of trust rendered Captain Willner unable to provide effective advice, so it was good cause to relieve him as counsel. Captain Reigler replaced Willner as substitute defense counsel, and the military judge completed the post-trial session. On November

8, 1990, the military judge made findings of fact based on the post-trial hearing and provided Captain Reigler with a copy.

On November 9, 1990, the SJA submitted a second addendum to his recommendation. He noted that the post-trial hearing had been completed and that the judge had made findings of fact that no juror had slept during the trial. Captain Reigler, the substitute defense counsel, was not served with this addendum. On November 19, 1990, the substitute defense counsel examined the post-trial hearing record, some 6 days after the convening authority took action.

## DISCUSSION

### A

The rules of law to be applied in this case are clear and simple. However, because the critical facts in this case are not "salted down," we are thwarted in applying those rules.

An allegation that the original detailed defense counsel had rendered ineffective assistance would have precluded him from responding to the SJA's initial recommendation because of an attorney-client conflict of interest. On the other hand, in *United States v. Carter*, 40 MJ 102 (1994), we held that post-trial responses to an SJA's recommendation made "prior to notification of a claim of ineffectiveness of defense counsel are 'mentally free of competing interest' ... and there [is] not need for a substitute counsel." *Id.* at 105–06.

Here, there is no clear factual record of what the defense counsel knew and when he knew it as to claims of ineffective assistance of counsel. *See United States v. Cornelious*, 41 MJ 397 (1995). The affidavit of Captain Willner does not address this issue, and the record of trial contains no dates concerning the SJA's receipt of the defense post-trial submission. Ordinarily, a remand would be necessary to consider the granted issue in light of *Carter*. *Id.* at 398. However, this relief is not required because there is an independent basis for requiring a new convening authority's action in this case.

### B

■  RCM 1106(f)(7), Manual for Courts–Martial, United States (1994 ed.), the version in effect at the time of the recommendation—which authorized the SJA to supplement his post-trial recommendation after receiving the comments of defense counsel—required: "When new matter is introduced after counsel for the accused has examined the recommendation, however, counsel for the accused must be served with the new matter and given a further opportunity to comment." According to the Discussion of this Rule, "new matter" includes "matter from outside the record of trial, and issues not previously discussed."

Although he did not enter an appearance as a counsel of record in this case, Captain Watson's involvement as defense counsel in this case is well documented. In his capacity as the base area defense counsel, he consulted with and assisted the defense in trial preparation and presentation, took confidences from appellant, and collected clemency matters (21 letters in appellant's clemency package are addressed to Captain Robert Watson, Area Defense Counsel). In his affidavit, Captain Willner asserts that "Captain Watson was detailed to the case" and refers to him as "one of the defense counsel."

Under these circumstances, appellant's allegation of ineffective assistance of counsel deserved close scrutiny. *See United States v. Tavolilla*, 17 USCMA 395, 399, 38 CMR 193, 197 (1968) (each appointed defense counsel is an integral part of the defense team and could not be absent unless excused by the accused); *see also United States v. Boone*, 42 MJ 308, 313 (1995) ("Where an accused is represented by both civilian counsel and detailed military counsel, the performance of defense counsel is measured by the combined efforts of the defense team as a whole."). Accordingly, the SJA erred by not serving the first addendum on appellant's trial defense counsel. *See United States v. Leal*, 44 MJ 235 (1996); *United States v. Jones*, 36 MJ 438 (CMA 1993); *United States v. Norment*, 34 MJ 224 (CMA 1992).

■ Moreover, the SJA erred by failing to serve on substitute defense counsel the second addendum, which addressed the issue of sleeping members. This issue had not been discussed in the original recommendation and was "new matter." *See United States v. Leal* and *United States v. Jones,* both *supra; United States v. Narine,* 14 MJ 55 (CMA 1982); RCM 1106(f)(7), Discussion.

This error is compounded by the convening authority's acting on appellant's case even before the substitute counsel had reviewed the record of the post-trial proceedings. We recently reaffirmed that the "essence of post-trial practice is basic fair play—notice and an opportunity to respond." *Leal, supra* at 237. The error here denied appellant these basic rights.

Before the court below on remand, appellant in his fifth assignment of error specifically challenged the findings of the military judge regarding the post-trial proceedings. Proper service of the second addendum on defense counsel would have afforded appellant the opportunity to present these matters initially to the convening authority, rather than to raise them first in an appellate court.

## C

■ In light of these multiple errors, we must address whether the appellant was prejudiced. *See United States v. Hickok,* 45 MJ 142 (1996) (counsel present to protect post-trial interest, so procedural error tested for prejudice). In *United States v. Jones,* 44 MJ 242, 244 (1996), we affirmed the principle that "injection of 'new matter' " is "presumptively prejudicial." Here, the Government has not rebutted that presumption. *Accord United States v. Leal, supra.*

"Ordinarily, we will not speculate on what the convening authority might have done if there had been full compliance with RCM 1106(f)(7)." *United States v. Jones,* 44 MJ at 244; *cf. United States v. DeGrocco,* 23 MJ 146 (CMA 1987). Certainly, we should not speculate that the convening authority would have granted no relief if he had been able to consider appellant's significant and substantive response to the two addenda to the

SJA's recommendation. On remand appellant will have the opportunity to assure that the facts are "salted down" and that a convening authority will be able to evaluate objectively the claims he has raised.

The decision of the United States Air Force Court of Military Review and the action of the convening authority are set aside; the record of trial is returned to the Judge Advocate General of the Air Force for submission to a different convening authority for a new recommendation and action. If necessary to establish facts as to Captain Watson's involvement and other ineffectiveness-of-counsel issues, the convening authority may order an evidentiary hearing. *See United States v. DuBay,* 17 USCMA 147, 37 CMR 411 (1967).

Judge SULLIVAN concurs.

COX, Chief Judge (concurring):

*Black's Law Dictionary* defines "addendum" as "[a] thing that is added or to be added; a list or section consisting of added material." *Id.* at 37 (6th ed. 1990). Therefore, in my view, an "addendum" is either redundant and not necessary, or is always new matter. *See United States v. Leal,* 44 MJ 235, 240 (1996)(Cox, C.J., dissenting in part and concurring in the result). In this case, the information supplied by the staff judge advocate was clearly significant; and, thus, the addendum containing it should have been served on defense counsel.

Accordingly, I concur.

GIERKE, Judge (concurring in part and in the result):

I agree with the result reached by the majority but I am troubled by the majority's treatment of the question of "new matter" in the first addendum. The majority does not identify what part of the staff judge advocate (SJA)'s addendum was "new matter" and fails to articulate a legal basis for concluding that it was "new matter."

Appellant asserted that he was inadequately represented, and the SJA responded that appellant was ably represented. This re-

sponse was not "new matter." *See* RCM 1106(f)(7), Discussion, Manual for Courts–Martial, United States (1994 ed.) (" 'New matter' does not ordinarily include any discussion by the staff judge advocate ... of the correctness of the initial defense comments on the recommendation.").

Appellant also asserted that there was a conflict of interest caused by Captain Watson's membership on the defense team. The SJA responded that "Captain Watson was not a counsel in the case." The record does not reflect the basis for the SJA's response. If the SJA's basis for this response was information from outside the record, the response was "new matter." RCM 1106(f)(7), Discussion. If, however, the SJA's response was merely a conclusion based on the record, it was not new matter but merely a comment on the correctness of the defense assertion. While the record reflects that Capt Watson did not enter a formal appearance in the case, was not introduced as a member of the defense during trial, and did not sit at the counsel table at trial, I cannot determine if that was the basis for the SJA's comment.

Notwithstanding my inability to determine the factual basis for the SJA's comment, I believe that his comment was new matter because it introduced a new issue. Appellant's complaint was that he was not competently represented because Capt Watson "was reluctant to invalidate his own work." This complaint was premised on Capt Watson's dual role as a member of the defense team, having previously acted for the prosecution in connection with preferral of charges. The SJA's response did not address the quality of Capt Watson's performance or the impact of his dual role on the defense representation, but instead raised a new factual issue: whether Capt Watson was in fact a member of the team.

This new issue blindsided the defense. Capt Willner (the individual counsel) had stated on the record that Capt Watson had assisted in the preparation of appellant's case and had "taken confidences" from appellant as part of that preparation. Many of the documents presented to the convening authority on clemency were addressed to Capt Watson. The SJA mentioned none of these indicia of Capt Watson's participation. Instead, the SJA made a factual assertion, at odds with the evidence of record, that appellant's factual premise for his claim of ineffective representation was invalid. Since this addendum was not served, appellant had no opportunity to set the record straight for the convening authority. For these reasons I join the majority in holding that the record must be returned for a new post-trial recommendation and service on conflict-free defense counsel.

Turning to the second addendum on the issue of the sleeping court member, I disagree with the majority on the applicable standard of review as well as its conclusion that the procedural error was prejudicial. I question whether this was truly an addendum or an original recommendation. Under either classification, however, I agree that service on the defense was required. Since appellant was represented by conflict-free counsel at this point, however, the SJA's failure to serve the second addendum must be tested for prejudice. *See United States v. Hickok,* 45 MJ 142 (1996); *United States v. Pierce,* 40 MJ 149 (CMA 1994); *United States v. Moseley,* 35 MJ 481 (CMA 1992). I find no prejudice.

The sleeping-juror issue was an allegation of legal error, not part of a clemency petition. Thus, the presumption of prejudice applied in *United States v. Leal,* 44 MJ 235, 237 (1996), and *United States v. Jones,* 44 MJ 242, 244 (1996), does not apply because this case does not involve the convening authority's unfettered prerogative to grant clemency. Instead, appellant is entitled to relief only if his allegation of legal error had merit. He is not entitled to an erroneous recommendation from the SJA or an erroneous decision from the convening authority. *See United States v. Welker,* 44 MJ 85, 88–89 (1996).

The issue of the sleeping court member was thoroughly investigated at a post-trial evidentiary hearing. Appellant presented four witnesses who asserted that a member sitting to the left of the president had been sleeping during the court-martial. Four of the five court members were questioned.

One court member, who had been sitting to the right of the president, had been reassigned and was unavailable to testify. The four court members who were questioned all denied sleeping or seeing any other member sleeping. Trial counsel and defense counsel from the original trial both testified that they saw no members sleeping. The military judge stated on the record that he had noticed no one sleeping. The Court of Criminal Appeals reviewed the issue and concluded that it was without merit. On this record, there is no way I can say that appellant was entitled to a different result on this issue.

For the foregoing reasons, I disagree with the majority's conclusion that failure to serve the second addendum entitles appellant to relief. However, based on the SJA's failure to serve his first addendum, I concur in the result reached by the majority.

## CRAWFORD, Judge (dissenting):

The majority concludes that because of "new matter" in the staff judge advocate (SJA)'s second addendum, "there is an independent basis for requiring a new convening authority's action in this case." 45 MJ 447, 451. I agree with the majority that "the SJA erred by failing to serve on substitute defense counsel the second addendum, which addressed the issue of sleeping members." *Id.* at 452. The majority asserts: "This error is compounded by the convening authority's acting on appellant's case even before the substitute counsel had reviewed the record of the post-trial proceedings." *Id.* at 452. But any error for failing to serve the second addendum concerning the sleeping court members would not affect the substantial rights of appellant because both the prosecutor and the defense counsel agreed with the military judge that such an allegation was untrue. Thus, service of the second addendum for a defense response would now be a futile exercise.

Additionally, failure of defense counsel to raise this issue below constitutes waiver, absent establishing good cause or manifest injustice. *United States v. Townsend,* 43 MJ 205, 212 (1995) (Crawford, J., dissenting). Neither has been shown in this case.