IN THE CASE OF

UNITED STATES, Appellee

v.

Teresa S. MILEY, Molder Chief
U.S. Navy, Appellant

No. 98-0721

Crim. App. No. 9600822

United States Court of Appeals for the Armed Forces

Argued October 22, 2003

Decided March 19, 2004

ERDMANN, J., delivered the opinion of the Court, in which GIERKE and EFFRON, JJ., joined. BAKER, J., filed a dissenting opinion in which CRAWFORD, C.J., joined.

Counsel

For Appellant: Lieutenant Rebecca S. Snyder, JAGC, USNR (argued).

For Appellee: Lieutenant Colonel John F. Kennedy, USMCR (argued); Colonel Michael Finnie, USMC (on brief).

Military Judge: N. H. Kelstrom

**This opinion is subject to editorial correction before final publication**.

Judge ERDMANN delivered the opinion of the Court.

Molder Chief Petty Officer[1] (E-7) Teresa Miley entered guilty pleas and was convicted by a military judge of larceny and forgery in violation of Articles 121 and 123, Uniform Code of Military Justice [UCMJ], 10 U.S.C. §§ 921 and 923 (2000). She was sentenced by the military judge to a bad-conduct discharge, 105 days confinement and reduction to the lowest enlisted grade.

In accordance with the terms of a pretrial agreement, the convening authority suspended the bad-conduct discharge and any confinement in excess of 90 days for a period of 12 months. Approximately nine months into that period of suspended punishment, Miley provided a urine sample that tested positive for the presence of methamphetamine. In addition to imposing punishment on Miley under Article 15, UCMJ, 10 U.S.C. § 815 (2000) for wrongful drug use, her suspended sentence was vacated on the basis of the positive drug test.

The Navy-Marine Corps Court of Criminal Appeals affirmed the findings of guilty and the sentence, including the vacation

---

[1] Chief Petty Officer Miley's Navy career field is that of a "Molder," who is someone who operates all types of foundry equipment and makes molds and cores. U.S. Bureau of Naval Personnel, U.S. Navy Interviewer's Classification Guide (NAVPERS 16701) (1943).

of Miley's suspended punishment. United States v. Miley, NMCM 9600822 (N-M. Ct. Crim. App. February 26, 1998). Miley filed an appeal with this Court and we granted review of her challenge to the vacation of the suspended sentence and specified an issue for review concerning the use of polygraph evidence as part of that vacation proceeding. United States v. Miley, 51 M.J. 232 (C.A.A.F. 1999).

After noting that the record included a number of conflicting and incomplete affidavits regarding the vacation proceeding, we concluded that the record was not appropriate for appellate review. Id. at 233. Our disposition of the appeal provided the convening authority the option of either (1) conducting further proceedings under United States v. DuBay, 17 C.M.A. 147, 37 C.M.R. 411 (1967) or (2), if a DuBay proceeding was deemed impractical, ordering a new vacation proceeding. Id.

On remand, the convening authority chose to order a new vacation proceeding. At the conclusion of that proceeding, the convening authority again vacated Miley's suspended sentence and her case was transmitted to the Court of Criminal Appeals for a second review under Article 66(c), UCMJ, 10 U.S.C. § 866(c) (2000).

The Court of Criminal Appeals once again affirmed the findings of guilt and the sentence, including the vacation of Miley's suspended sentence. United States v. Miley, NMCM

9600822 (N-M. Ct. Crim. App. October 11, 2002). In response to Miley's second appeal to this Court, we granted review of the following Issue I and specified Issue II:

I.   WHETHER THE LOWER COURT ERRED BY FINDING THAT THE VACATION HEARING OFFICER NEED NOT MAKE FINDINGS OF FACT AND PROVIDE A WRITTEN EVALUATION OF THE FACTS UPON WHICH SHE RELIED IN RECOMMENDING THAT THE SUSPENDED PORTION OF APPELLANT'S SENTENCE NOT BE VACATED WHERE THE GENERAL COURT-MARTIAL CONVENING AUTHORITY, WHO PROVIDED A WRITTEN EVALUATION OF THE EVIDENCE HE RELIED ON, DISAGREED WITH THE HEARING OFFICER'S RECOMMENDATION AND VACATED A PORTION OF THE SUSPENDED SENTENCE.

II.  WHETHER THE LOWER COURT ERRED BY FINDING THAT THE EVIDENCE PRESENTED AT THE VACATION HEARING WAS SUFFICIENT TO SUPPORT A FINDING OF MISCONDUCT WHERE THE SPCMCA APPLIED A PROBABLE CAUSE EVIDENTIARY STANDARD AND WHERE IT IS UNCLEAR WHAT STANDARD WAS APPLIED BY THE GCMCA.

We hold that the vacation hearing officer's decision and recommendation to the general court-martial convening authority did not comply with the requirements of Rule for Courts-Martial 1109 [R.C.M.] and, as a consequence, that the Court of Criminal Appeals erred in affirming Miley's findings and sentence. In light of the disposition of Issue I, we do not reach Issue II.

## BACKGROUND

The convening authority opted to conduct a second vacation proceeding rather than conduct a DuBay inquiry concerning alleged deficiencies in the first vacation proceeding. The "vacation hearing officer", i.e., the special court-martial convening authority (SPCMCA), held a hearing in March of 2000 in accordance with R.C.M. 1109(d)(1)(A) for the purpose of

4

determining whether Miley had violated the conditions of her suspension.

Miley's defense to the alleged wrongful methamphetamine use was a claim of innocent ingestion, as it had been at the first vacation hearing. She asserted that her daughter's boyfriend had stored methamphetamine in some Tylenol gel capsules that he had inadvertently left in their household. According to Miley, neither she nor her daughter was aware of the boyfriend's actions and as a result her daughter had unwittingly given her two of the methamphetamine-laced Tylenol gel capsules for a headache. Miley also testified that she had become sick and began vomiting after taking the Tylenol gel capsules.

Although they did not testify in person at the second vacation proceeding, the testimony given by Miley's daughter and the ex-boyfriend in the Article 15 proceeding was considered by the SPCMCA. That testimony supported Miley's innocent ingestion claim, with the ex-boyfriend asserting that he had in fact lost his Tylenol gel capsules and believed that they had fallen from his pants pockets while changing clothes at the Miley residence.

Miley was the only witness to provide testimony at her vacation hearing. The SPCMCA also considered several items of documentary evidence, including the terms of the pretrial agreement, the drug laboratory report, and the record of the Article 15 proceedings. At the conclusion of the hearing, the

5

SPCMCA indicated that she would "render [her] decision as to whether there is probable cause to believe that the conditions of [Miley's] suspension have been violated; and if so, whether to vacate the suspended sentence . . . ."

After adjourning to consider the matter, the SPCMCA called the hearing back to order and issued the following ruling:

> I have carefully looked over your issue.  The bottom line is that I am not going to vacate your suspended sentence. That is the first thing, not because I don't think you're guilty, but because three years ago, the Navy should have done it correctly.  Therefore the Federal Government and U.S. Navy should be held responsible for this.  You should not have to come back three years later because the Navy didn't do its' [sic] job correctly the first time.  I am not positive whether I buy your story or not.  I have been here nine months at [Transient Personnel Unit], and I don't buy many stories.  Whether you knowingly ingested it or not, I don't know.  I believe you showed poor judgment in having an individual of that character in your house with your 17-year old daughter.  I certainly hope that over the last three years you have seen the light, changed your behavior, and are now making a positive contribution to society.
>
> I find that there was not probable cause to believe that the conditions of your suspension have been violated.
>
> My recommendation is not to vacate the suspended sentence.

The Hearing Officer then completed the appropriate portions of DD Form 455 "Report of Proceedings"[2] and formally recommended that the suspension of the sentence not be vacated.  This DD Form 455 and a Record of Vacation Hearing were forwarded to the

---

[2] The full title of the Form is "Report of Proceedings to Vacate Suspension of a General Court-Martial Sentence or of a Special Court-Martial Sentence Including a Bad-Conduct Discharge under Article 72, UCMJ, and R.C.M. 1109."

General Court-Martial Convening Authority (GCMCA) for review and further action.

The GCMCA rejected the SPCMCA's recommendation that the suspended sentence not be vacated and provided the following summary of the evidence he relied upon:

1. In determining whether MLC Miley's suspended sentence should be vacated, I considered: (a) her positive urinalysis of 3 June 96 (as evidenced by Navy Drug Screening laboratory ltr 5355 Ser 41/C1439 of 24 Nov 99 w/enclosures), (b) her claim of innocent ingestion, as set forth in the transcript of her testimony at the 20 March 2000 vacation hearing as well as her NJP appeal package of 18 July 96, which includes statements by [her daughter and her daughter's ex-boyfriend], (c) her court-martial conviction for larceny and forgery, and (d) the terms of MLC Miley's pretrial agreement.

2. On the advice of my Staff Judge Advocate, I did not consider any information about a polygraph examination to which MLC Miley may or may not have submitted; nor did I consider any of the information contained in exhibits (2) and (9) of the recorder's document package. I note MLC Miley's counsel objected to these documents at the hearing and the hearing officer did not accept these documents for consideration.

The GCMCA then went on to provide the following reasons for his decision:

1. I find MLC Miley violated the terms of her pretrial agreement when, during the period of her suspended sentence, she knowingly used methamphetamine in violation of Article 112A [sic], UCMJ.

2. I do not believe MLC Miley's claim of innocent ingestion. The improbability of her story, in addition to her court-martial conviction for offenses involving dishonesty and deception, gives her little credibility. Further, the statement of [her daughter's ex-boyfriend], an admitted drug-abuser, is unbelievable and offers little to support her claim. I am convinced MLC Miley knowingly used

7

methamphetamine and, thus, violated the terms of her pretrial agreement.

The GCMCA then vacated the suspension of Miley's bad-conduct discharge and her reduction to the lowest enlisted grade.

## DISCUSSION

This appeal centers on the respective roles of the SPCMCA and the GCMCA in the process for vacating a suspended sentence of a general court-martial. That process is governed by Article 72, UCMJ, 10 U.S.C. § 872 (2000) and R.C.M. 1109, both of which require that the SPCMCA (1) conduct a hearing on the alleged violation of the conditions of suspension and (2) transmit a record of that hearing and his/her recommendation to the GCMCA. See Article 72(a)-(b); R.C.M. 1109(d)(1)(A), (D).

Upon receipt of the package, the GCMCA is required to review the record and the SPCMCA's recommendation and decide whether the probationer violated a condition of suspension. If so, the GCMCA must decide whether to vacate the suspended sentence. R.C.M. 1109(d)(2)(A). If a decision is made to vacate the suspended sentence, the GCMCA is required to prepare a written statement of the evidence relied on and the reasons for that decision. Id.

The SPCMCA conducted the required hearing and she sent a record of that hearing to the GCMCA along with DD Form 455. The GCMCA rejected the SPCMCA's recommendation and provided his required "written statement of the evidence relied on and the

reasons for vacating the suspended sentence."  R.C.M.
1109(d)(2)(A).

Miley contends that the process followed here was
defective, however, because the SPCMCA never resolved the
factual questions underlying the attempt to vacate her suspended
sentence and made no determination as to whether those facts, as
found, warranted vacation of the suspended sentence.  While the
SPCMCA's recommendation was favorable to Miley, i.e., to not
vacate the suspension, it was not based on any factual
determination that Miley had not violated the terms of her
suspension.  Rather, the SPCMCA's recommendation appears to have
been based, as the Court of Criminal Appeals put it, "on
equitable grounds."  Miley, NMCM 9600822 at 6 (N-M. Ct. Crim.
App. October 11, 2002).

The Court of Criminal Appeals held that the SPCMCA as "the
hearing officer [was] obligated to provide an evaluation of any
contested facts and a determination of whether the facts as
found warrant vacation."  Id.  The court below viewed that
"obligation" as arising under its earlier decision in United
States v. Dupuis, 10 M.J. 650, 653 (N.C.M.R. 1980).  The Dupuis
decision, in turn, characterized the SPCMCA's obligation to
evaluate and determine contested facts as "constitutional due
process requirements" flowing from our decision in United States
v. Bingham, 3 M.J. 119 (C.M.A. 1977).  See Dupuis, 10 M.J. at

9

653 (characterizing Bingham as addressing constitutional due process).

Although we need not decide today whether this is a requirement of constitutional dimension, we agree with the Court of Criminal Appeals that the SPCMCA is required to provide an evaluation of any contested facts and a determination of whether the facts, as found, warrant vacation of the suspension. That obligation arises as a requirement under R.C.M. 1109(d)(1).

The rule requires the SPCMCA to "personally hold a hearing" on the alleged violation of the conditions of suspension, make a summarized record of that hearing and to transmit both the record and a "written recommendation concerning vacation" to the GCMCA. R.C.M. 1109(d)(1)(A), (D). The SPCMCA acts as the GCMCA's eyes and ears during this process and is the only official to personally observe the demeanor of the witnesses – in this case Miley.

The requirements set forth in R.C.M. 1109(d)(1) would have little meaning if the SPCMCA was not required to resolve any contested evidentiary questions and provide the basis for that resolution to the GCMCA. As Senior Judge Everett has reminded us in the past, "'[a]lways salt down the facts first: the law will keep.' . . . In the very nature of things, it is impossible for a court to enter a valid judgment declaring the rights of parties to litigation until the facts on which those

10

rights depend have been 'salted down' in a manner sanctioned by law." United States v. Haney, 45 M.J. 447, 448 (C.A.A.F. 1996)(quoting then North Carolina Supreme Court Justice Sam Ervin in Erickson v. Starling, 71 S.E.2d 384, 395-96 (N.C. 1952)). To the extent that the hearing contemplated by R.C.M. 1109(d)(1) is the only "hearing" conducted during the vacation process, it makes little sense to conclude that the rule does not require that any facts actually be "salted down" at the hearing.

Accordingly, the "written recommendation" required of the SPCMCA under R.C.M. 1109(d)(1)(D) must include both an evaluation of the contested facts and a determination of whether the facts warrant vacation. The SPCMCA's comments at the conclusion of Miley's hearing that "I am not positive whether I buy your story or not" and "[w]hether you knowingly ingested it or not, I don't know" fall short of fulfilling the requirements of R.C.M. 1109(d)(1)(D). As the Court of Criminal Appeals noted, she "failed to evaluate the facts" and chose to make a recommendation based on "equitable grounds." Miley at 6. We must now address the consequences, if any, that flow from that error.

Citing its decision in Dupuis, the Court of Criminal Appeals concluded that "[i]f the hearing officer fails to provide the required evaluation of facts, that defect may be

11

cured by the GCMCA." Id. In Dupuis, as in the present case, the SPCMCA provided "no evaluation" of the evidence even though the facts were contested. Dupuis, 10 M.J. at 653. The Court of Military Review observed that it was "preferable" that such an evaluation be provided by the SPCMCA, but concluded that the "failure to do so" was not "fatal" if the GCMCA "remedies the defect by making the necessary evaluation and findings of fact." Id. at 653-54.

We disagree. While there may well be forms of error committed by an SPCMCA in fulfilling his or her responsibilities under R.C.M. 1109(d)(1) that a GCMCA's compliance with R.C.M. 1109(d)(2) might "remedy," a failure to evaluate and determine the contested facts is not one of them. While the GCMCA was "convinced that Miley knowingly used methamphetamine and, thus, violated the terms of her pretrial agreement" none of those facts were discussed or found by the SPCMCA, the official who was in the best position to evaluate the demeanor and credibility of the only live witness.

The "record produced by and the recommendation of" the SPCMCA is the basis upon which the GCMCA must "decide whether the probationer violated a condition of suspension, and, if so, decide whether to vacate the suspended sentence." R.C.M. 1109(d)(2)(A). As we have recognized in the past, the GCMCA's review of that record and his or her ultimate decision

12

"represents a substantial right because the [GCMCA] may for any reason or no reason at all decide not to vacate the agreed-upon suspension." United States v. Smith, 46 M.J. 263, 268 (C.A.A.F. 1997). However, without any resolution of disputed facts and/or determinations of witness credibility by the SPCMCA, the GCMCA is left with an insufficient record upon which to base his or her ultimate decision.

The GCMCA correctly set forth his decision and the evidence that he relied upon in making that decision, however the record that he relied upon was devoid of an integral step -- the resolution of critical fact questions by the SPCMCA. Miley had a substantial right to that step in the process and we will not speculate as to what decision the GCMCA may have made if the SPCMCA had properly evaluated and resolved the contested facts in the record. Cf. United States v. Chatman, 46 M.J. 321, 323-24 (C.A.A.F. 1997)(refusing to speculate as to what the convening authority might have done if the post-trial review process had been conducted properly).

## CONCLUSION

Accordingly, the decision of the United States Navy-Marine Corps Court of Criminal Appeals and the action of the general court-martial convening authority in vacating the suspension of the sentence are set aside. The record of trial is returned to the Judge Advocate General for remand to the general court-

13

martial convening authority to determine whether further vacation proceedings are practicable.  If deemed practicable, the proceedings shall be conducted in a manner consistent with this opinion.  If deemed impracticable, the general court-martial convening authority shall enter a supplemental action in the record consistent with his or her obligations under the terms of the pretrial agreement.  Thereafter, Articles 66 and 67, UCMJ, 10 U.S.C. §§ 866 and  867 (2000) will apply.

BAKER, Judge, with whom CRAWFORD, Chief Judge, joins (dissenting):

In Morrissey v. Brewer, 408 U.S. 471 (1972), the Supreme Court recognized a tension between due process fact finding and the informal nature of parole revocation hearings. We have been cognizant of these tensions as applied to vacating suspended sentences in the military, United States v. Bingham, 3 M.J. 119 (C.M.A. 1977), but in my view the majority here swings the pendulum too far in the direction of procedural form and away from essential substance. The unfortunate consequence is an unnecessarily burdensome vacation procedure that may discourage commanders from suspending sentences where such suspension is warranted. Consequently, I respectfully dissent.

## Discussion

Appellant's vacation package included the following:

(1) The report of the lab indicating that a member with Appellant's Social Security Number had tested positive for drug use.

(2) Paperwork reflecting the chain of custody for the urine sample in question.

(3) A report of the imposition of punishment pursuant to Article 15, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 815 (2000) on July 1, 1996, and her subsequent appeal reflecting, inter alia, (a) the Commanding Officer's determination by a preponderance of the evidence that Appellant had knowingly and wrongfully used methamphetamine; and, (b) that while Appellant was aware of her right to contest the charged conduct at a court-martial, she had ultimately accepted an Article 15.

1

(4) A two-page written statement from Appellant providing her account of events leading to her innocent ingestion of the methamphetamine.

(5) A statement from Appellant's daughter and her daughter's boyfriend stating their accounts of Appellant's innocent ingestion of the drug.

Before making her vacation recommendation to the General Court-martial Convening Authority (GCMCA), the Special Court-martial Convening Authority (SPCMCA), acting as hearing officer, reviewed this documentation and took oral testimony from Appellant. Appellant's testimony describing the events leading to her innocent ingestion of the methamphetamine was consistent with her written statement.

The hearing officer subsequently forwarded the documentation cited above, the hearing transcript, and her recommendation to the GCMCA. The transcript includes the following statement made by the hearing officer:

> I have carefully looked over your issue. The bottom line is that I am not going to vacate your suspended sentence. That is the first thing, not because I don't think you're guilty, but because three years ago, the Navy should have done it correctly. Therefore the Federal Government and U.S. Navy should be held responsible for this. You should not have to come back three years later because the Navy didn't do its' [sic] job correctly the first time. I am not positive whether I buy your story or not. I have been here nine months at [Transient Personnel Unit (TPU)], and I don't buy many stories. Whether you knowingly ingested it or not, I don't know. I believe you showed poor judgment in having an individual of that character in your house with your 17-year old daughter. I certainly hope that over the last three years you have seen the light, changed your behavior, and are now making a positive contribution to society.

> I find that there was not probable cause to believe that the conditions of your suspension have been violated.
>
> My recommendation is not to vacate the suspended sentence.

(Emphasis added.)

The majority concludes that the vacation package sent to the GCMCA lacked three requisites:  (1) a written evaluation of the contested facts; (2) a resolution of the contested facts; and, (3) a written determination of whether the facts, as found, warranted vacation of the suspension.  The majority also states that "Miley had a substantial right to that step in the process and we will not speculate as to what decision the GCMCA may have made if the SPCMCA had properly evaluated and resolved the contested facts in the record."  ___ M.J. (13).  In my view, this record, evaluation, and recommendation comply with applicable due process requirements.  Black v. Romano, 471 U.S. 606 (1985); Gagnon v. Scarpelli, 411 U.S. 778 (1973); Morrissey, 408 U.S. at 471; Bingham, 3 M.J. at 119.

The hearing officer's evaluation and recommendation certainly could have been refined.  But the vacation hearing was not intended to substitute for a judicial hearing; a hearing officer's evaluation of facts and recommendation are not intended to conform to a military judge's findings of fact and conclusions of law.  The Court in Morrissey and Romano

3

recognized that there is a tension in parole revocation hearings between due process and the informal nature of the proceedings in question. Morrissey, 408 U.S. at 484-85 ("We now turn to the nature of the process that is due, bearing in mind that the interest of both State and parolee will be furthered by an effective but informal hearing."); Romano, 471 U.S. at 611 ("Our previous cases have sought to accommodate these [probationers' and States'] interests while avoiding the imposition of rigid requirements that would threaten the informal nature of probation revocation proceedings or interfere with exercise of discretion by the sentencing authority."). As a result, the Supreme Court sought a balance between the two and signaled to the legal field that subordinate courts should do the same when addressing comparable processes. Referring to the preliminary hearing of a two step parole revocation process the Supreme Court in Morrissey wrote:

> "[T]he decision maker should state the reasons for his determination and indicate the evidence he relied on . . ." but it should be remembered that this is not a final determination calling for "formal findings of fact and conclusions of law." No interest would be served by formalism in this process; informality will not lessen the utility of this inquiry in reducing the risk of error.

408 U.S. at 487 (quoting Goldberg v. Kelly, 397 U.S. 254, 271 (1970)).

In striking the Morrissey balance in the military context, I believe the majority overlooks the Court's caution regarding

4

what it referred to as "formalism."  In this case, the hearing officer garnered the facts, evaluated them, and stated reasons supporting her recommendation.  The hearing officer found the facts inconclusive:

> I am not positive whether I buy your story or not.  I have been here nine months at TPU, and I don't buy many stories.  Whether you knowingly ingested it or not, I don't know.

Although the hearing officer might have better documented her conclusion that she could not determine who was telling the truth, I would not require a hearing officer to reach a factual conclusion when in her view the evidence does not support one factual conclusion over another.  That is a conclusion in its own right that the GCMCA can effectively consider while exercising his duty to decide on vacation and "complete a written statement 'as to the evidence relied on and the reasons for revoking parole'."  Bingham, 3 M.J. at 123 (quoting Morrissey, 408 U.S. at 489).  Further, the hearing officer ultimately based her recommendation on equitable grounds involving the procedural history of the case as opposed to her evaluation of the underlying facts.  I do not see this as problematic, however, since she stated on the record her rationale for doing so.  The GCMCA remained free to agree or disagree with the hearing officer's recommendation and reasons and had a full record on which to assess her reasoning and base his independent conclusions.

The more intensive procedures the majority desires will likely discourage convening authorities from suspending sentences as it may now appear too difficult for SPCMCAs to create a reversal-proof record. This would be an unfortunate result. Suspended sentences serve important societal and military interests. They can be used to provide essential income for innocent dependents compelled to transition to civilian society as a result of the military member's conduct. Moreover, a suspended discharge may give a commanding officer further time and opportunity to assess the rehabilitation potential of a once promising service member. Suspended sentences also serve to regulate and encourage good conduct while service members await discharge or serve confinement.

Vacation hearings might benefit from the sort of findings of fact more familiar to military judges than to commanding officers. However, I believe such a requirement is neither compelled as a matter of due process nor currently found in Article 72, UCMJ, 10 U.S.C. § 872 (2000) or Rule for Courts-Martial 1109. The vacation record should include a transparent rendering of what occurred and why as well as a rendering of the evidence, but the process should not unduly burden commanders so as to discourage them from suspending sentences where they are warranted.

In this case, the GCMCA had all the available facts and arguments on his desk.  He also had the hearing officer's honest, transparent, and albeit ultimately uncertain assessment of Appellant's defense on his desk.  In my view, Appellant received the process due and had fair opportunity to make her case.  As a result, I respectfully dissent.